**STATE of Maine**

**v.**

**Eugene Earl CLARK.**

Supreme Judicial Court of Maine.

Nov. 17, 1976.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., Portland,

Theodore H. Kirchner, Law Student, for plaintiff.

Wallace S. Reed, Scarborough, for defendant.

Before DUFRESNE, C. J., and WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

GODFREY, Justice.

In Superior Court, Cumberland County, a jury found defendant guilty of armed assault and battery under former 17 M.R.S. A. § 201–A. From the judgment of conviction, defendant has appealed on three grounds: (1) that a gun the police said they took from defendant's person was improperly admitted in evidence, (2) that the trial judge made certain improper remarks to the jury, and (3) that the evidence did not suffice in its entirety to support a verdict of guilty. We deny the appeal.

The indictment charged defendant with having shot and wounded one Ross in front of Ross's home in Portland at about four o'clock in the morning of October 16, 1975. Defendant denied that he was the assailant. The only direct testimony that he was came from Ross who identified defendant as the driver and sole occupant of a station wagon which had stopped in front of Ross's house and from which three shots were fired when Ross approached it. Two other persons present at the scene could not identify the assailant. While testimony about events earlier that morning tended to confirm the truth of Ross's statements, Ross's testimony identifying defendant might not alone have convinced a jury beyond a reasonable doubt that defendant was indeed the assailant.

Crucial to the case for the prosecution were the results of ballistics tests done on a certain hand gun, found in the defendant's possession on October 31, 1975, showing it to be the gun from which the shots had been fired at Ross. Two Brunswick policemen testified that they had obtained the gun under the following circumstances: At about seven o'clock in the evening of October 31, 1975, Officer Thomaston of the Brunswick Police Department received a telephone call from a certain citizen of Brunswick who reported that while driving out of the Bath-Brunswick shopping plaza he had observed a man he did not know remove a hand gun from a duffel bag he was carrying and place it in his belt underneath his jacket.

Officer Thomaston went promptly to the citizen's place of employment and talked with him. The citizen said he had observed the episode from a distance of about fifteen feet and described the subject as a male of stocky build, with a beard, moustache and long sideburns, wearing a dark jacket, white cowboy hat, and carrying a brown duffel bag.

While the citizen was giving that description to Thomaston, Sergeant McFarland of the Brunswick police joined them in their discussion. Sergeant McFarland testified that he had known the reporting citizen five or six years, that the two had talked on various occasions, that he knew where the citizen had worked previously, where he was currently employed, and the nature of his employment. On hearing the citizen's description of the man carrying a gun, McFarland told his fellow officer that he had just seen a person meeting that description walking south on the Bath Road (U.S. Route 1) toward Brunswick. The Bath Road runs past the Bath-Brunswick Plaza.

With Thomaston following in a separate vehicle, McFarland proceeded north on the Bath Road. About one mile south of the plaza, he saw a man meeting the description given by the reporting citizen. Sergeant McFarland stopped the man, who turned out to be Eugene Clark, the appellant in this case, and asked him where he was going. McFarland testified that Clark looked at him and made no response. At that moment Officer Thomaston arrived,

and Clark was again asked where he was going. Clark asked why the police wanted to know. McFarland replied, "We have a report that you were seen taking a hand gun out of that bag and putting it on your person." Clark denied having a gun. McFarland then said, "Well, you don't mind being searched then", read a *"Miranda* warning" to him, and told Clark he would search him—that "any suspicious character" putting a hand gun under his coat could be searched.

The two officers testified that just after Clark was given the *"Miranda* warning", Clark opened up his jacket and said, "Go ahead and search me; I ain't got no gun." Other testimony indicated, however, that Clark may have given a less comprehensive consent to be searched. While patting Clark around the waist and back, Sergeant McFarland said he touched the outside of Clark's right pocket and felt a bulge "that felt like a gun." Reaching inside the pocket, McFarland pulled out a Luger pistol. He then told Clark he was under arrest for carrying a concealed weapon without a license—a misdemeanor under 25 M.R.S.A. § 2031 (1975 Supp.), which was then in force. Clark's own testimony on trial was to the effect that he never had the gun, that the first time he saw it was when the police showed it to him during the confrontation on the Bath-Brunswick highway.

At trial a ballistics expert testified that a slug and two cartridge cases found at the scene of the October 16 shooting of Ross matched samples taken from the gun found on Clark's person on October 31. The jury may well have found this to be highly probative evidence linking Clark to the shooting of Ross.

At a pre-trial suppression hearing, the defense sought to exclude evidence about the gun on the ground that the gun was seized pursuant to an unlawful search. The presiding justice denied the motion to suppress.

Taking into account all the circumstances, we think it was constitutionally permissible for the police officers, without a warrant, to detain Clark on the highway and to make a limited search of his person for a concealed unlicensed hand gun he had been reliably reported to carry. The case is one for the application of principles laid down in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and followed in our own decisions, e. g., *State v. Babcock*, Me., 361 A.2d 911 (1976). *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), makes it clear that the Fourth Amendment does not require a detention for investigation to be based either upon personal observation of the police or upon facts sufficient to constitute probable cause for a formal arrest.

The search and seizure here met all the tests for reasonableness announced in *Terry*. There can be no question about the legitimacy and strength of the government's interest in identifying and apprehending persons going about in public places carrying concealed hand guns without a license to do so. The police officers, having reliable information that an easily identifiable person was out in public secretly armed, would have been remiss in performing their duty if they had not initiated an appropriate investigation. The fact that the person was walking along a major highway where he might be picked up by some unsuspecting motorist created an exigency requiring prompt action without the delay required to get a warrant.

The Brunswick policemen detained appellant because of specific factual information, not because of some hunch or general feeling of suspicion. The facts on which they based their detention of Clark were "articulable facts"—to use the term employed by the Supreme Court in *Terry*. A concerned citizen with no possible bad motive had informed them in a face-to-face interview that he had directly observed a

man, whom he described in considerable detail, place a hand gun in his belt under his coat. One of the arresting officers was personally acquainted with the reporting citizen. There was no reason whatever to suppose that the citizen had any purpose in giving the information other than concern for the safety of persons who might later encounter the man he described. His report described the appearance and dress of that man in enough detail that the police had no sensible reason to doubt that the man he described as headed for the Bath-Brunswick highway was in fact the man they found walking south on that highway. The citizen's statement of the time when he had observed the man leaving the plaza tallied with the distance the man would have walked when the police came upon him. Finally, the description of the man tallied with Sergeant McFarland's own earlier observation of him when McFarland was driving to the citizen's place of employment in Brunswick in response to the citizen's call. Sufficient indicia of reliability were present to justify the police in believing that the citizen's information was worthy of belief and that the subject of the information could be identified with a high degree of certainty.

Whether this particular credible report to the police, linking appellant to the crime of carrying a concealed weapon without a license, amounted to probable cause to make an outright arrest is a question we do not have to decide in this case. At least it justified further investigation by the police and thus rendered the initial detention of appellant a reasonable intrusion upon his privacy within the requirements of the Constitution as interpreted in the *Terry* case.

Out of a reasonable apprehension for their own safety in view of their very purpose in detaining Clark, the police acted within the narrow limits of their constitutional authority in making their ensuing limited search for a dangerous weapon.

Moreover, their limited search, initially justified, made before Clark's formal arrest, never exceeded the scope of its purpose of insuring their own safety.

The search and seizure of appellant's gun were reasonable under the circumstances within the meaning of the Constitution, and the presiding justice justifiably refused to exclude evidence about the gun in the trial of appellant for armed assault and battery.

■ In reaching this result, we do not intend to undercut by implication our old rule that a warrantless arrest for a misdemeanor is improper, in the absence of broader statutory authorization, unless the offense is committed in the arresting officer's presence. *See State v. Cowperthwaite*, Me., 354 A.2d 173, 176 (1976). That rule does not preclude police officers from investigating a reported misdemeanor occurring outside their presence. Although appellant was detained pursuant to an investigation initiated on the basis of facts occurring outside the presence of the arresting officers, his eventual arrest occurred only after the unlicensed gun was lawfully taken from his person. At that moment the police directly observed that a misdemeanor had taken place in their presence.

The appellant also seeks reversal of the judgment of conviction on the gound that the trial judge made a prejudicial statement to the jury. After the state had finished presenting its case at five o'clock in the afternoon, the judge called a bench conference in which he proposed to both counsel that the trial go on into the evening after an hour's recess. Neither counsel objected. The judge then made the following announcement in open court:

"What we're going to do is have a brief recess. This is a matter that I think should be finished today, I think we should finish this case today. This is the last matter you have to take care of.

I'm going to have a recess for about fifteen minutes or as long as it takes and then we will send out for something to eat. Remember, no discussion and don't start to form any opinion, keep an open mind to this case."

Neither then nor later in the trial did counsel offer any objection to the proposed procedure or to the judge's language in stating it to the jury.

■ In *State v. Stevens*, Me., 343 A.2d 592 (1975) we held that informing jurors that there is a time limit upon their deliberations carries such a danger of interfering with full, free and untrammeled consideration of the evidence as to make the validity of the verdict suspect. We are asked in this appeal to consider whether the statment of the trial judge imposed on the jury's deliberations a similar constraint that would render the verdict suspect. We hold that it did not.

In a comparable federal case, the trial judge had told the jury that if they did not reach a verdict in an hour or so he would declare a mistrial. The making of this statement was held on appeal to constitute reversible error. It was deemed impermissibly suggestive and coercive for the court to "place a time fuse on the period of jury deliberation." *Goff v. United States*, 446 F.2d 623, 626 (10th Cir. 1971).

In *State v. Stevens,* cited above, no specific "time fuse" had been set, but the trial judge did indicate to the jury that both he and the County Attorney had other pressing appointments. The judge's direct admonition, "We are working against time," coupled with the volume and complexity of the evidence and the brief duration of the jury's deliberation precluded us in *Stevens* from finding harmless error.

In the case before us we find no admonition to the jurors that they should reach their decision quickly. It was not suggested that they should spend less time deliberating that evening than they would if they returned the following day, nor was it suggested that they could not return the next day if they should need to do so in order to reach a fair verdict. At side bar the trial judge had told counsel that the primary reason for continuing with the case was that the evidence would still be fresh in everybody's mind.

When the judge made the statement the defense still had to present its case in chief. If the defense should happen to require the entire evening, it would be impossible to finish the trial on that day. If the defense should happen to be brief, as it was, and the jury be asked to deliberate that evening, the fact that the jurors were given supper during the five o'clock recess removed any incentive for their rendering a quick verdict in order to go home for dinner. When the defense rested, counsel duly made their closing statements and the judge charged the jury at considerable length. When he directed the jury to retire and consider its verdict, he said nothing whatever about the duration of its deliberations. We cannot believe the jurors supposed themselves under any pressure of time in reaching a verdict.

Appellant's final argument is that there was insufficient evidence to support the jury's finding of guilt beyond a reasonable doubt. We have reviewed carefully the record of the trial. While there is some conflict between the testimony of the defendant and that of some other witnesses, the jury could have rationally found beyond a reasonable doubt that appellant was guilty as charged.

The entry is:

*Appeal denied.*

All Justices concur.

POMEROY, J., did not sit.