STATE of Maine

v.

Ronald JOHNSON.

Supreme Judicial Court of Maine.

Argued March 12, 1980.

Decided April 23, 1980.

Michael D. Seitzinger, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

Ronald L. Bishop (orally), Waterville, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

GLASSMAN, Justice.

On April 3, 1979, the Kennebec County Grand Jury indicted the defendant and Steve Gillcash for murder of the defendant's mother in violation of 17–A M.R.S.A. § 201(1)(A). Subsequently, the defendant's trial was severed from that of his codefendant. M.R.Crim.P. 14. After disposition of the charges against the codefendant, Johnson's motion for change of venue was granted and venue was changed to Lincoln. County. On May 17, 1979, the defendant filed two motions for return of property and suppression of evidence. One motion sought to suppress evidence seized from the victim's automobile pursuant to a warrant, and the other motion sought to suppress evidence seized from the joint residence of the defendant and the victim located at 12 Charland Terrace in Waterville. On August 21, 1979, the defendant filed two amended motions to suppress. Following hearing on the amended motions, the Superior Court Justice issued an order denying the defendant's motion to suppress that related to material seized from the automobile and granting the motion to suppress that related to material seized from the residence in Waterville. Pursuant to 15 M.R.S.A. § 2115–A, the State appealed to this Court from the order granting the motion to suppress. On motion of the State, the appeal was expedited. We vacate the order suppressing evidence.

On March 28, 1979, Sergeant Nelson of the Waterville Police Department was called to the Charland Terrace residence, arriving at 6:27 a. m., and was told by Officer Kaherl that there appeared to be a dead body inside the house. Sergeant Nelson forced his way into the dwelling through the garage and the kitchen doors and proceeded into the den where he, accompanied by three other officers, found the dead body of Mrs. Verna Johnson. Noting the absence of vital signs, the officers checked all the other rooms in the house to determine whether other victims or the perpetrator were still on the premises. No persons were discovered. During the course of going through the house, Sergeant Nelson noticed various items of evidence which are at issue in this appeal. Neither he nor his men touched or seized any of these items. Sergeant Nelson testified that this conduct was in accordance with the routine procedure that homicides were to be investigated by the State Police Laboratory. The officers' conduct also complied with the requirements of 22 M.R. S.A. § 3027(1)(A), which provides:

> In any medical examiner case no person shall move or alter the body or any objects at the scene of death prior to the arrival, or without the express authorization, of the medical examiner or Office of the Chief Medical Examiner[.] [1]

Having been on the scene for approximately five minutes, Sergeant Nelson and his men then secured the premises and went outside to await the arrival of the Maine State Police.

Trooper Beal of the State Police Laboratory arrived at approximately 8:20 a. m. Upon his arrival, he found waiting outside Sergeant Nelson and other officers of the Waterville Police Department, two State Police homicide detectives and the chief medical examiner and his assistant. The officers again entered the dwelling, and Sergeant Nelson escorted Trooper Beal through the house pointing out various items of evidence. Beal then photographed and systematically "processed" the scene. This procedure included dusting for latent fingerprints and seizing physical evidence that was in plain view. Trooper Beal seized

---

1. "Medical examiner case" is defined in 22 M.R.S.A. § 3025(1) and includes a case in which death is suspected as resulting from "[v]iolence of any kind". 22 M.R.S.A. § 3025(1)(A).

a total of twenty-one items from inside and outside the residence, all of which were in plain view, spending approximately five hours at the scene. Two-thirds of this time was spent collecting and marking evidence and the rest dusting for latent fingerprints and taking photographs. On the following day, State Police officers returned to the dwelling with a warrant and searched the premises for evidence relating to the homicide.

At the suppression hearing, the State represented that, although it was not conceding their legal inadmissibility, it would not seek to introduce any of the items collected by Trooper Beal except (1) a wine-colored candle holder with blood on it; (2) a sponge with blood on it found in the kitchen sink; (3) two knives found in the kitchen sink; (4) a bloodstain found on the kitchen sink; (5) broken ceramic pieces found on the floor around, and in the chair with, the victim; and (6) photographs of the scene taken by Beal. The Superior Court Justice granted the defendant's motion to suppress and ordered the suppression of all of these items.

■ The State does not here challenge the Superior Court's findings of fact but urges that the Justice misinterpreted the law, causing him to reach erroneous conclusions. Since the challenges here are to the legal conclusions of the Superior Court Justice, and not to his findings of fact, the clearly erroneous standard is inapplicable.

■ Subject to a few carefully drawn exceptions, searches conducted without a warrant are *per se* unreasonable. *State v. Dunlap*, Me., 395 A.2d 821, 824 (1978); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The State must establish the existence of such an exception by a preponderance of the evidence. *State v. Heald*, Me., 314 A.2d 820, 829 (1973). It is well established that "a warrantless entry by criminal law enforcement officials may be legal when there is compel-

ling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486 (1978); *Warden v. Hayden*, 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782 (1967); *Ker v. California*, 374 U.S. 23, 39–41, 83 S.Ct. 1623, 1632–1634, 10 L.Ed.2d 726 (1963). Of course, any search and seizure conducted pursuant to this exigent circumstances exception must be "limited as to method, place and time to be commensurate with such exigency." *State v. Stone*, Me., 294 A.2d 683, 691 (1972). Once law enforcement officers are lawfully on the premises, a seizure of evidence in plain view is not a violation of the fourth and fourteenth amendments. *State v. Mitchell*, Me., 390 A.2d 495, 499 (1978).

■ The knowledge that there was an apparently dead body on the premises at Charland Terrace created exigent circumstances. There was a compelling need for the law enforcement officers to secure immediate entry to determine whether the apparent victim was alive or dead, whether there were other victims in the house and whether the perpetrator was about the premises and to secure evidence, such as latent fingerprints and bloodstains, which by the passage of time might have become unavailable.[2] Apparently, the defendant concedes this much since no attack is made upon the entry of Sergeant Nelson at 6:27 a.m. Nor is there any suggestion that the entry of the medical examiner, apparently contemporaneous with that of Trooper Beal at 8:20 a.m., was illegal. It is, however, the defendant's contention that the entry of Trooper Beal was illegal and that the photographs he took and the objects in plain view he seized must therefore be suppressed.

■ Sergeant Nelson was by law prohibited from moving the body or seizing any evidence on the premises until the medical examiner arrived and took over the di-

2. Because he concluded the officers could have secured a search warrant, the Superior Court Justice sustained an objection which prevented the State from fully developing the transient nature of some of the evidence. The very point

in issue on the motion was whether exigent circumstances excused the failure to secure a warrant; therefore, the State had a right to offer any evidence which was relevant to the issue of exigent circumstances.

rection of the investigation. No purpose would have been served by his remaining in the house until Trooper Beal and the medical examiner arrived. We conclude that Trooper Beal's entry was no more than an "actual continuation" of Sergeant Nelson's entry and "the lack of a warrant thus did not invalidate the resulting seizure of evidence." *Michigan v. Tyler, supra,* 436 U.S. at 511, 98 S.Ct. at 1951.

The case of *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), does not compel a different conclusion. In *Mincey,* the United States Supreme Court merely decided that the categorical exception to the warrant requirement for the search of a homicide scene adopted by the Arizona Supreme Court was contrary to the fourth and fourteenth amendments. *Id.* at 395, 98 S.Ct. at 2415. The Court specifically noted that the Arizona court could on remand determine to what extent the evidence "was permissibly seized under established fourth amendment standards . . ." *Id.* at n. 9, 98 S.Ct. at 2415. Although this Court in the past has recognized an exception for homicide scene searches, *see State v. Chapman,* Me., 250 A.2d 203 (1969),[3] we conclude that decision has lost its vitality as a result of the ruling of the United States Supreme Court in *Mincey v. Arizona, supra,* and we place no reliance on *Chapman.*

In *Mincey,* there was not only a question as to the legality of the entry by the officers, but they conducted an exhaustive and intrusive search for a period of four days. During that search the police opened drawers, closets and cupboards, examined containers, tore up carpets and seized two to three hundred items, many of which were

not in plain view. In the instant case, the police conducted a very limited search, seizing only items that were in plain view.[4] Although Trooper Beal did open drawers in the victim's bedroom, he very carefully did not conduct a search in the bedroom he believed to be that of the defendant. His search of the victim's bedroom was limited to examining a jewel box and dusting it for fingerprints. None of the evidence seized was taken as a result of this minor intrusion. Before conducting a more exhaustive search of the premises, the officers secured a warrant. Thus, the search and seizure here involved were limited in scope, time and method to the exigencies of the situation. In light of those exigencies, they were reasonable and lawful.

The entry is:

Appeal sustained.

Order suppressing evidence vacated.

Case remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

**3.** It is interesting to note that the Arizona Supreme Court cited *State v. Chapman, supra,* in support of its categorical exception for homicide scene searches. *State v. Mincey,* 115 Ariz. 472, 482 n. 4, 566 P.2d 273, 283 n. 4 (1977), *rev'd,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). For a useful analysis of *Mincey* and *Chapman, see* 2 W. LaFave, Search and Seizure § 6.5(e) (1978).

**4.** The Superior Court Justice found that the items seized by Trooper Beal were in plain view but that his discovery of them was not "inadvertent" since they had been seen earlier

by Sergeant Nelson. We reject this analysis for two reasons: (1) the requirement of "inadvertence" added to the traditional "plain view" doctrine by Justice Stewart's plurality opinion in *Coolidge v. New Hampshire,* 403 U.S. 443, 469, 91 S.Ct. 2022, 2040, 29 L.Ed.2d 564 (1971), has never commanded a majority of the United States Supreme Court; and (2) since we have concluded that Beal's entry was an "actual continuation" of Nelson's entry, there was no violation of the "inadvertence requirement" in any event. *Cf. Michigan v. Tyler, supra,* 436 U.S. at 501–02.