**STATE of Maine**

v.

**Michael HASENBANK.**

Supreme Judicial Court of Maine.

Argued Nov. 3, 1980.

Decided Feb. 27, 1981.

David M. Cox, Dist. Atty., R. Christopher Almy, Gary F. Thorne (orally), Asst. Dist. Attys., Bangor, for plaintiff.

Hall, DeSanctis & Schultz, Julio DeSanctis (orally), Bangor, for defendant.

Before McKUSICK, C. J., WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

On March 3, 1980, Michael Hasenbank, the defendant-appellee, was charged in the Superior Court, Penobscot County, under a two-count indictment with the crimes of possession of a firearm by a felon in violation of 15 M.R.S.A. § 393, a Class C crime, and of carrying a concealed weapon in violation of 25 M.R.S.A. § 2031, a Class E crime. Prior to trial, he made a motion, pursuant to Rule 41(e), M.R.Crim.P., to suppress for use as evidence against him a .22 caliber hand gun on the ground that the State had obtained the weapon as a result of an unlawful stop, frisk and search of his person and the seizure of the article in violation of his Fourth Amendment rights. On May 1, 1980, the State appealed, pursuant to 15 M.R.S.A. § 2115–A and rule 37A(d),[1] from the Superior Court's order suppressing the hand gun. The suppression ruling was erroneous. We sustain the State's appeal and vacate the order suppressing the evidence. The case is remanded to the Superior Court.

The facts are not in dispute. While on patrol on February 8, 1980, Bangor Police

---

1. Rule 37A(d) has been deleted effective September 1, 1980 and is now replaced by Rule 37B.

Officer Harold Patterson received a radio report from the police dispatcher. The dispatcher relayed the information that a woman had just called the police station to report seeing a man remove what appeared to be a gun from his boot and stick it into his belt under his jacket. The dispatcher further stated that the subject was reportedly on a certain street in Bangor, that he was tall, had red hair and red beard, and was dressed in blue jeans and blue jean jacket.

Officer Patterson immediately drove to the area described by the dispatcher and spotted a man fitting the description he had received. As Officer Patterson approached the man, he recognized him as Hasenbank, a man who the officer knew had been "in trouble" and who had been "known to carry" a gun. Officer Patterson stopped Hasenbank and patted him down. Feeling what he believed to be a weapon, Patterson reached under Hasenbank's jacket and pulled out a .22 caliber hand gun. Patterson then arrested Hasenbank.

■ As a preliminary matter, we note that the State does not challenge any factual findings of the Superior Court. Indeed, no facts were disputed at the suppression hearing. Thus, the "clearly erroneous" standard of review is inapplicable. *State v. Johnson*, Me., 413 A.2d 931, 933 (1980). The Justice's conclusion that the stop-and-frisk violated Hasenbank's Fourth Amendment rights resulted from his application of legal principles to undisputed facts. As a legal conclusion drawn from uncontroverted facts, the Superior Court's ruling is independently reviewable on appeal. *Cf. State v. Cefalo*, Me., 396 A.2d 233, 239 (1979), including note 13, *citing Brown v. Allen*, 344 U.S. 443, 506, 73 S.Ct. 397, 446, 97 L.Ed. 469 (1963), and *Watts v. State of Indiana*, 338 U.S. 49, 50–51, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949).

Thus, the legal issue before us is: can an anonymous tip ever provide the basis for a valid stop and frisk? We answer in the affirmative.

"Stop and frisk" are words of art which first acquired meaning nonjudicially in the development of law enforcement procedures. In law enforcement parlance, a "stop" meant a temporary investigative detention of an individual short of arrest. A "frisk" meant the pat-down of an individual's outer clothing to determine whether he was carrying a weapon, a procedure not amounting to a full search. As a matter of constitutional law, the validity of the initial stop is crucial in determining whether evidence seized as a result of the stop is admissible in a subsequent prosecution of the person stopped. *See State v. Hetland*, Fla. App., 366 So.2d 831, 834 (1979), affirmed in *Hetland v. State*, Fla., 387 So.2d 963 (1980).

■ The United States Supreme Court has held that a stop and frisk is not *per se* an unreasonable search and seizure forbidden by the Fourth Amendment to the United States Constitution.[2] In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Court ruled that circumstances providing less than probable cause to arrest would support a limited protective search for concealed weapons by a police officer who reasonably believed, in light of his experience, that an individual he was investigating might be armed and dangerous.

■ The basic *Terry* principle to be garnered from the decision is: a stop is permissible if based on a reasonable suspicion that criminal activity is afoot and a frisk of the person stopped is permissible if the officer has reason to believe the person to be armed and dangerous. The validity of the stop and the validity of the frisk are to be assessed separately, but a frisk cannot be upheld if the initial stop was improper.

In its later decision in *Adams v. Williams*, 407 U.S. 143, at 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972), the Supreme Court

---

**2.** Evidence obtained by a search and seizure in violation of the Fourth Amendment is inadmissible in state courts under the due process clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

clearly indicated that the facts supporting a limited *Terry*-type stop-and-frisk need not be based on an officer's personal observation, but could be provided by an informant, as long as the information carried enough indicia of reliability to justify a forcible stop and pat-down for weapons.

■ Whether an anonymous tip carries within itself "enough indicia of reliability" to support a *Terry*-type stop-and-frisk must needs depend on the totality of the information given by the informant and the observations made by the officer, to the extent that such information and observation find corroboration from the person of the suspect himself, his activity and surroundings. Hence, each case must be decided on its own facts. *Ballou v. Commonwealth of Massachusetts*, 1st Cir., 403 F.2d 982, 986 (1968).

■ Adequate indicia of reliability of anonymous tips may arise from the very specificity of the information given respecting the individual suspect, since detailed descriptive characteristics of the person, including the clothes he is wearing, when corroborated by the officers who shortly thereafter find an individual in the given spot or area exactly fitting the description, strongly indicate that the information is based on the personal observation of the informant. There is some verification factor in the very accuracy of the informant's description.

■ While "unusual conduct" on the suspect's part observed personally by the investigating officer may be a reliable indicator that the individual is armed, (*see, e. g. Murphy v. United States*, 293 A.2d 849, 850 (D.C.App.1972) (officer saw bulge on side of suspect's coat); *Lawson v. United States*, 360 A.2d 38, 39 (D.C.App.1976) (as officers approached suspect, they observed him making motions "as if to hide something")), the officer's personal observation of unusual conduct is not necessary. *See, e. g. State v. Clark*, Me., 365 A.2d 1031 (1976);

*see also State In the Interest of H. B.*, 75 N.J. 243, 381 A.2d 759, 765 (1977); *United States v. Walker*, 294 A.2d 376 (D.C.App. 1972), cert. denied, 414 U.S. 1007, 94 S.Ct. 368, 38 L.Ed.2d 245 (1973). The fact that Hasenbank was behaving in an innocuous manner when approached by Officer Patterson is not fatal to a finding that Patterson's stop of Hasenbank was constitutionally reasonable. Reliable indicia that an individual is carrying a concealed weapon may be found in information provided to police by a citizen informant who witnessed the conduct. *See, e. g. Ballou v. Commonwealth, supra* at 985; *State v. Clark, supra* at 1032–34; *see also State In the Interest of H. B., supra*, 75 N.J. 243, 381 A.2d at 762; *Lawson v. United States, supra*, at 40; *United States v. Walker, supra* at 377–78; *People v. Taggart*, 20 N.Y.2d 335, 283 N.Y. S.2d 1, 229 N.E.2d 581 (1967).

■ When police receive detailed and immediately verifiable information that a specifically described individual possesses a concealed weapon, the police are justified in stopping that person and conducting a limited protective search for weapons. *State v. Clark, supra* at 1033. Information from a known or named informant may provide readier justification for a stop-and-frisk than where the informant is anonymous, *see, e. g. Adams v. Williams, supra* at 617 (known informant provides "a stronger case than obtains in the case of an anonymous telephone tip"); however, under certain circumstances, the report of a crime by an eye-witness is sufficient to provide the basis for further police investigation whether or not the witness is willing to identify himself. *See Ballou v. Commonwealth, supra* at 984–85; *Lawson v. United States, supra* at 40; *Murphy v. United States, supra* at 850. The reliability of an anonymous telephone tip arises from on-the-spot contemporaneous observation by the eye-witness, plus immediate visual corroboration by police.

■ In the instant case, Officer Patterson was relayed a fairly detailed description

of Hasenbank, who, with his red hair and beard, was unlikely to be the subject of mistaken identity. Patterson had been informed of Hasenbank's action of removing a gun from his boot and sticking it into his belt. Patterson spotted Hasenbank, who fitted exactly the description given of the suspected person, in the immediate area described by the telephone tipster. Moreover, Patterson recognized Hasenbank as a man who he knew had been "in trouble" and who had been "known to carry" a gun. Under these circumstances, Patterson had a duty to investigate the tip and ultimately to stop Hasenbank. *See Walker v. United States, supra* at 377–78; *State v. Clark, supra* at 1033; ("The police officers, having reliable information that an easily identifiable person was out in public secretly armed would have been remiss in performing their duty if they had not initiated an appropriate investigation.")

 Police receiving anonymous information that a particular individual is carrying a concealed weapon face a Hobson's choice: investigate the tip and stop the individual, in which case they jeopardize their safety unless they frisk, or ignore the tip and forfeit the opportunity to forestall the use of the weapon. *See State In the Interest of H. B., supra*, 75 N.J. 243, 381 A.2d at 765. We must resolve this choice in favor of the limited intrusion on privacy represented by a stop and pat-down for concealed weapons. Thus, we hold that, where police receive information which, even though provided by an anonymous informant, indicates that the informant has personal knowledge that a described individual is carrying a concealed weapon, the officers, after visually confirming the accuracy of the supplied description, may stop and frisk the individual and lawfully seize any weapons they find.

The circumstances surrounding the instant anonymous tip provide the "indicia of reliability" that make a limited protective search constitutionally reasonable. The citizen informant who is a chance witness to a

crime and who furnishes the police with facts sufficiently detailed to reliably identify a specific individual as armed provides the "articulable facts" that differentiate a lawful stop and pat-down from unlawful police invasions of privacy.

A limited, pat-down search for the purpose of protecting investigating officers and the public satisfies "the need for a realistic State approach to the dangers presented by the modern proliferation of hand guns in the possession of millions of citizens including, of course, many violent criminals." *State In the Interest of H. B., supra*, 75 N.J. 243, 381 A.2d at 759–60.

We emphasize that today's ruling does not mean that the police, on the mere pretense of disarming a potentially dangerous person, may conduct a warrantless search of the individual without an initial limited pat-down exploration for weapons, with the distinct object of discovering enough evidence to supply probable cause for arrest. *See State v. LeBlanc*, Me., 347 A.2d 590, 594 (1975); *Sibron v. State of New York*, 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 936 (1968). What we are sanctioning, here, are not warrantless searches for evidence of contraband, but, rather, limited searches for weapons, under articulable factual circumstances reliably indicating that certain individuals identifiable with a high degree of certainty may be then and there committing the crime of carrying a concealed weapon without a license, by police officers having the duty to investigate for the protection of the public and their own safety. *See State v. Clark, supra* at 1033–34; *State v Hudson*, Me., 325 A.2d 56, 60 (1974).

The entry will be:

Appeal sustained.

Order suppressing evidence vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.