STATE of Maine

v.

Kirk R. HOUSE.

Supreme Judicial Court of Maine.

Argued June 20, 1984.

Decided Sept. 5, 1984.

David W. Crook, Dist. Atty. (orally), Skowhegan, for plaintiff.

Sherman, Sandy & Millett, Robert E. Sandy, Jr. (orally), Waterville, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Defendant Kirk House was convicted after a jury trial in Superior Court (Somerset County) of the following charges: two counts of vehicular manslaughter, 17–A M.R.S.A. § 203 (1983 & Supp.1983–1984); one count of OUI, 29 M.R.S.A. § 1312–B (Supp.1983–1984); one count of operating after suspension, 29 M.R.S.A. § 2184

(Supp.1983–1984); and, one count of driving to endanger, 29 M.R.S.A. § 1314 (Supp. 1983–1984).

On appeal defendant argues that the court erred in the following respects: by failing to dismiss all charges because of the state's failure to preserve evidence; by denying pretrial motions for the suppression of physical evidence and a statement made by defendant; by failing to grant a mistrial; and, by permitting inadmissible testimony to be introduced. We find no error, and we deny the appeal.

## I.

Defendant is the sole survivor of a one car accident in which his companions, Carl Foster and Leroy Goodrich, died. The accident occurred at approximately 5:00 a.m. on August 27, 1982 when a car owned by defendant failed to negotiate a curve and hit a telephone pole at the intersection of Routes 23 and 104 in Fairfield Center. The car split into two parts on impact, and the body of Leroy Goodrich was found wedged against the telephone pole in the rear portion of the car. Carl Foster and defendant were found in the roadway, apparently having been thrown from the front portion of the car.

It was the position of the defense at trial that Carl Foster was driving at the time of the accident. There were no witnesses to the accident, and defendant did not testify. The state presented two medical witnesses and an expert in accident reconstruction who testified that in their opinion defendant was the driver of the vehicle. Defendant presented an expert in accident reconstruction who testified that in his opinion the identity of the driver could not be determined. Defendant was convicted on all charges, and he appeals.

## II.

Three days before trial, defendant moved to dismiss all counts of the indictment on the ground that the state failed to preserve the car, thereby depriving defendant of an opportunity to gather evidence for his defense.

The accident occurred during the early morning of August 27, 1982. That same day, the two halves of the car were towed from the accident scene to an autobody shop in Fairfield at the direction of the State Police. Numerous photographs of the car were taken both at the scene and at the shop. The car was secured in a locked building for about one week while the state's agents conducted their examination. At the end of that week, an unidentified police officer told the shop's owner to do what he pleased with the car, and it was moved outside. Later in the fall of 1982, the back portion of the car was moved to a field in Rome. In July of 1983, the shop owner moved the front portion to the same location after removing the transmission and engine.

Defense counsel was appointed on September 17, 1982. He made no attempt to examine the vehicle before August 10, 1983, when he learned for the first time that the car was no longer secured. Defendant's motion for the appointment of an expert witness was granted on August 4, 1983. Defense counsel and his expert witness visited the field to inspect the car at some point after August 10, 1983. On Friday, September 16, 1983—three days before the trial began—defendant moved to dismiss the indictment for the state's failure to preserve the car. He argues that he was prejudiced in the following manner: first, he was precluded from testing the state's evidence by challenging the thoroughness of the state's examination of the car; second, he was precluded from discovering and introducing exculpatory evidence which the state might have missed; and third, the credibility of his expert witness was diminished because his expert had not personally examined the car while it was secured.

Defendant does not contend that the state destroyed or withheld exculpatory evidence; such conduct would clearly be violative of defendant's right to due pro-

cess. *See United States v. Agurs,* 427 U.S. 97 (1976); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The prosecutor's duty to disclose evidence is not implicated in this case because there is no suggestion that the state, either intentionally or innocently, suppressed any *exculpatory* evidence. *See generally Annot.,* 34 A.L.R.3d 16, at § 6 (1970 & Supp. 1983). Defendant does not contend that the state failed to preserve relevant evidence. Each item of evidence obtained from defendant's car by agents of the state was preserved and made available to defendant's counsel.[1] Defendant concedes that the frame and body of the car were still available at the time of trial and had been personally examined by his expert witness prior to trial. Notwithstanding the fact that the state made available to defendant all evidence taken from the car, defendant argues that the entire car should have been secured from August 27, 1982 until August 10, 1983, when defense counsel and his expert were prepared to examine the interior of the car for evidence which the state might have overlooked.

 Defendant's complaint does not involve the destruction or suppression of evidence but rather it involves the loss of an opportunity to examine evidence under the same conditions as were afforded to the agents of the state. Defendant attempts to characterize his car immediately after impact as one piece of evidence, and would require the state to secure that piece of evidence and make it available to him without alteration. In fact a car sheared in half and scattered over the roadway is more analogous to the scene of a crime than to a single piece of evidence. Defense counsel's speculation that exculpatory evidence might have been overlooked does not entitle defendant to a dismissal of the in-

dictment. The Superior Court committed no error in denying defendant's motion to dismiss.

### III.

Defendant moved to suppress both the articles seized from defendant's car and the results of the tests performed on those articles, on the ground that the state conducted a warrantless search and seizure. The presiding justice ruled that a warrant was not required under the circumstances, and we agree.

In *State v. Johnson,* 413 A.2d 931 (Me. 1980) we held that the police are justified in entering a house to locate a possible homicide victim and are justified in conducting a limited search and seizure of items in plain view. The search at issue in *Johnson* was the officer's examination of a jewelry box and his dusting of the box for fingerprints. We held that the search was limited "in scope, time and method to the exigencies of the situation." 413 A.2d at 934.

 In the instant case the police were similarly justified in being at the scene of the accident on a public highway and in trying to aid the accident victims. Empty beer bottles and a cooler in the back seat were in the plain view of the officers at the scene and reasonably suggested that alcohol was a factor in the accident. In addition, the accident scene provided probable cause to believe that the operation of the car was criminal even in the absence of alcohol. In *Johnson* this Court held that "[t]here was a compelling need for the law enforcement officers ... to secure evidence, such as latent fingerprints and bloodstains, which by the passage of time might have become unavailable." 413 A.2d at 933. The officers in the present case

---

1. The evidence obtained from the interior of the car included the following: torn pieces of clothing found in the car; pieces of car seat fabric; the brake and clutch pads; the steering wheel; test results from blood stains found in the car; test results from arm and head hairs found in the car; and numerous photographs taken from various angles at the scene and at the autobody

shop. The Superior Court justice found that the portions of the vehicle that were removed or disposed of prior to hearing were irrelevant to the issues in this case. The missing parts were the engine, the transmission, the keys, and the tires. The record from the hearing on defendant's motion to dismiss supports the justice's factual findings.

were faced with the same exigencies regarding blood stains, hairs, fingerprints and clothing remnants. The Superior Court did not err by concluding that a warrant was not required in these circumstances.

## IV.

At the beginning of trial, defendant moved for a mistrial after Count V of the indictment, charging defendant with operating after suspension, was read to the jury. Defendant argues that he was irreparably prejudiced by its reference to the cause of the license suspension, namely, "conviction for second offense operating under the influence of intoxicating liquor." The presiding justice denied the motion for mistrial, but immediately thereafter he advised the jury that the indictment is a charging instrument only and is not to be considered as evidence. During the presentation of evidence and the instructions to the jury no reference was made to defendant's two prior convictions for operating under the influence. The parties agreed to delete any reference to the underlying convictions from the certificate of suspension introduced in evidence.

■ Defendant argues that 15 M.R.S.A. § 757 (Supp.1983–1984),[2] requires the granting of a mistrial. The justice's curative instruction after defendant's objection and the subsequent exclusion of any reference to the prior convictions were sufficient to protect defendant from potential jury prejudice. The trial justice did not abuse his discretion in denying the motion for mistrial.

## V.

Defendant next argues that his statement to a police officer should have been suppressed.

Rescue personnel took defendant from the accident scene to a nearby hospital. Officer Pouliot of the Fairfield police department was sent to the hospital with instructions to obtain a blood alcohol test and to obtain defendant's clothing. He was instructed not to arrest defendant and not to question him. After administering a blood alcohol test, the officer, a neighbor of defendant, commented to defendant that he "was lucky to be alive." Defendant responded, "If I didn't know how to drive a car, I would be a dead man right now."

**2.** The statute provides in relevant part as follows:

§ 757. *Allegation of prior conviction when sentence enhanced; procedure*

*1. Allegation required.* Except as otherwise provided by law, a prior conviction shall be specially alleged if the sentencing provision of any crime requires that a present sentence be enhanced because the defendant has been previously convicted of a specified crime. A sentence is enhanced within the meaning of this section only if the maximum sentence which may be imposed is increased or a mandatory minimum nonsuspendable sentence must be imposed. The prior conviction may be alleged as part of a count in the complaint, information or indictment alleging the principal offense or may be alleged in an ancillary complaint, information or indictment. An ancillary charging instrument may be filed with the court at any time prior to the imposition of the sentence on the principal offense and sentencing shall be continued until after there has been an opportunity to obtain an indictment if an indictment is re-

quired for the allegation of the prior conviction or adjudication.

*2. Procedure.* In a trial to a jury in which the prior conviction is for an offense which is identical to the current principal offense or is sufficiently similar that knowledge of the fact that defendant has been convicted of the prior offense may, in the determination of the presiding justice, unduly influence the ability of the jury to determine guilt fairly, the allegation of the prior conviction or adjudication shall not be read to a jury until after conviction of the principal offense, nor shall the defendant be tried on the issue of whether he was previously adjudicated or convicted until after conviction of the principal offense, unless the prior conviction has been admitted into evidence for another reason. The jury which found the defendant guilty of the current principal offense shall determine whether the defendant was convicted of the prior alleged offense unless that jury has been discharged prior to the filing of an ancillary charging instrument.

15 M.R.S.A. § 757(1) & (2).

██ On appeal defendant argues that his statement should have been suppressed because it was obtained in violation of his Sixth Amendment right to counsel. Defendant did not raise a Sixth Amendment argument before the Superior Court. His pretrial motion raised the issues of voluntariness and failure to give a *Miranda* warning. In determining that defendant's *Miranda* rights were not violated, the hearing justice made factual findings that defendant was not in custody and that Pouliot's statement was not intended to elicit an incriminating response. Even if the defendant's Sixth Amendment argument could be heard for the first time on appeal, those factual findings are dispositive. *See State v. White,* 460 A.2d 1017 (Me.1983).

## VI.

Defendant moved to suppress his boots as evidence on the ground that they were seized without a warrant. The hearing justice found that defendant consented to Officer Pouliot's seizure of the boots. On appeal defendant does not challenge the finding of consent, but argues that consent was obtained through the officer's misrepresentation. He urges us to hold that the warrantless seizure is therefore illegal.

When Officer Pouliot advised defendant at the hospital that he would like to have his clothing and boots, defendant responded that the boots were the only footwear he owned. Pouliot assured defendant that his boots would be returned. At the hearing on this motion, defendant testified that the boots had not been returned to him and he claims a misrepresentation occurred.

██ Defendant did not raise the issue of misrepresentation at the hearing on this motion. He argued only that he never consented to the taking. The justice found, however, that defendant did consent. Whether the officer obtained defendant's consent through misrepresentation is a factual question which could only be deter-

mined by the motion justice before whom the witnesses testified. The issue was not raised below and cannot be raised for the first time on appeal.

## VII.

Finally, defendant argues that the presiding justice abused his discretion in admitting the opinion testimony of Dr. Ryan and Dr. Hume that defendant was the operator of the car. Dr. Ryan, a forensic pathologist, performed autopsies on defendant's companions and Dr. Hume, a general surgeon, examined defendant in the emergency room.

██ In *State v. Ifill,* 349 A.2d 176 (Me. 1975) this Court held that a forensic pathologist who personally examines the wrecked vehicle may testify on the location of the deceased passengers and the defendant at the time of the accident. Defendant seeks to distinguish this case from *Ifill* on the basis that Ryan and Hume did not personally examine defendant's car and are therefore unqualified to state an opinion. This distinction is without significance because both Ryan and Hume used photographs of the car as the basis for their expert opinion. The Superior Court committed no error in determining that the requirements of M.R.Evid. 703 were met.

The remaining issues raised on appeal are without merit and require no discussion.

The entry must be:

Judgments of conviction affirmed.

All concurring.