STATE OF MAINE

KENNEBEC, ss.

REC'D & FILED

Nancy A. Desjardin

JUN 21 2000

Clerk of Courts
Kennebec County

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-99-382

DHM-KEN- 6/21/2000

STATE OF MAINE

v.

CHRISTOPHER FIELDS,

Defendant

ORDER ON MOTION
TO SUPPRESS

This matter came before the court on defendant's motion to suppress. Defendant was indicted for a burglary and two counts of theft. The defendant alleges that the police did not have a reasonable and articulable suspicion to stop him with respect to such offenses in that the information in the possession of the officers was insufficient to form the basis of a stop. Defendant relies on *State v. Lux*, 1999 ME 136, 740 A.2d 556; *State v. Samson*, 669 A.2d 1326 (Me. 1996); *State v. Hasenbank*, 425 A.2d 1330 (Me. 1981); *State v. Clark*, 365 A.2d 1031 (Me. 1976).

There are two different incidents in the indictment, one involving the theft of personal property from a store and the other involving burglary and theft from an office. On July 28, 1999, at approximately 2:00 a.m., an Augusta police office on bicycle patrol received a complaint of a shoplifting incident of a 12-pack of soda (later determined to be iced tea). The officer at the time of receipt of the complaint was two or three blocks away from the store in question. As he approached the parking lot of a retail establishment next to the store, he noted a group of people standing on the sidewalk. He approached the group and had a conversation with the first person with whom he came in contact. That person happened to be the defendant. As he

was discussing the purpose of his investigation with the defendant, and approximately one minute later, another individual pointed out the defendant as the person who had taken the soda. After the identification by the witness, the officer spoke again with the defendant. He did not, however, detain the defendant nor place him in custody. Prior to the identification by the witness, the officer did not ask the defendant to identify himself arfd he was not familiar with the defendant.

Approximately 50 minutes later, another officer of the Augusta Police Department on cruiser patrol received word from his dispatcher that a caller, represented to be a neighbor, advised the dispatch that a burglary was in progress at a specific location on Green Street. The information provided was that there were two male subjects observed leaving the burgled premises and walking along the street in a direct toward State Street. Within a very short period of time, the officer arrived at the intersection of Green Street and State Street and saw a male subject a few feet in on Green Street making a motion as though he were placing things on the ground. The location is approximately 200 feet from the premises burgled. As the officer approached the individual, who turned out to be the defendant, he noticed a small wooden bench of approximately two feet by one foot dimension and a telephone on the ground within three feet of the defendant. The officer made inquiry of the defendant as to whether the articles belonged to him as he thought it was rather peculiar that an individual would be in possession of those particular items at that time of day within 200 feet of property recently described to be subject of

2

a burglary. At this time the officer asked the defendant for identification. The defendant had no identification but did give the officer his name and date of birth.

It is defendant's position that in both incidents the officers effected a stop of the defendant without the appropriate articulable suspicion and, further, whatever suspicion might have been created did not have sufficient detail to provide the necessary indication of reliability upon which the officers could lawfully act. Defendant argues that by the officers asking the defendant for identification, they are effecting a stop in the constitutional sense. Defendant relies on *State v. Moulton*, 1997 ME 228, 704 A.2d 361 for the proposition that in order to justify an investigatory detention short of formal arrest, a law enforcement officer must act on the basis of specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.

*Moulton* is a seizure case. It says that "[a]n encounter between a police officer and a citizen implicates the Fourth Amendment only if the officer 'seizes' the citizen." *Id.* ¶ 6, 704 A.2d at 363 (*citing State v. LaPlante*, 534 A.2d 959 (Me. 1987)). "[A] seizure occurs when, under a totality of the circumstances, a reasonable person would believe she is not free to leave." *Id.* ¶ 7, 704 A.2d at 363 (*citing United States v. Mendenhall*, 446 U.S. 544 (1980)). The issue in this case is a determination whether a "stop" has taken place that is acceptable under present constitutional standards.

With respect to the first conversation between the officer and the defendant on the sidewalk near the convenience store prior to identification by the defendant as the person committing the theft, *Moulton* is instructive. "Police officers do not

3

violate the Fourth Amendment by merely approaching an individual on the street or in another public place, or asking her if she is willing to answer some questions." *see also State v. Griffin*, 459 A.2d 1086 (Me. 1983). Generally, warrantless arrest for a misdemeanor is improper unless the offense is committed in the arresting officer's presence. *State v. Clark*, 365 A.2d 1031, 1034 (Me. 1976). However, this rule "does not preclude police officers from investigating a reported misdemeanor occurring outside their presence." *Id.* This court is satisfied that the first encounter by a police officer with the defendant was neither a stop nor a seizure but simply a matter of investigation. Further, there is no evidence that the defendant was restrained or taken into custody even after his identification as the alleged misdemeanant.

With respect to the second incident on Green Street, law enforcement officials are justified in making an investigatory stop if, "at the time of the stop: (1) [they have] an 'articulable suspicion' of criminal activity; and (2) [that] suspicion is 'objectively reasonable in the totality of the circumstances'". *State v. Lux*, 1999 ME 136, ¶ 8, 740 A.2d 556, 558 (*quoting State v. Lear*, 1998 ME 273, ¶ 5, 722 A.2d 1266, 1267). Was the stop by the officer based upon specific factual information or because of some hunch or general feeling of suspicion? *See State v. Clark*, 365 A.2d 1031, 1033 (Me. 1976). Defendant argues that the dearth of information provided by the informant is fatal to the "stop" by the officer. It is clear that an anonymous tip can provide the basis for a valid stop. *See State v. Hasenbank*, 425 A.2d 1330, 1332 (Me. 1981). "[A] stop is permissible if based on a reasonable suspicion that criminal activity is afoot." *Id.* (*citing Terry v. Ohio*, 392 U.S. 1 (1968)). "[A] limited Terry-

4

type stop-and-frisk need not be based on an officer's personal observation but could be provided by an informant as long as the information carried enough indicia of reliability to justify a forcible stop." *Id.* at 1331-32 (*citing Adams v. Williams,* 407 U.S. 143 (1972)). The court must look to the totality of the information given by the informant and the observations made by the officer. *Id.*

"In order to initiate an investigation involving brief detention short of a formal arrest, a law enforcement officer must act on the basis of 'specific and articulable facts which, taken together with rational references from those factors, reasonably warrant that intrusion.'" *State v. Pinkham,* 565 A.2d 318, 319 (Me. 1989) (*quoting State v. Griffin,* 459 A.2d 1086, 1089 (Me. 1983)). However,

> nothing in the Fourth Amendment requires that "specific and articulable facts" relate to suspected criminal activity, although that was the factual context of both *Terry* and *Griffin.* If we were to insist upon suspicion of activity amounting to a criminal or civil infraction to meet the *Terry/Griffin* standard, we would be overlooking the police officer's legitimate role as a public servant to assist those in distress and to maintain and foster public safety.

*Id.*

The officer received information that a resident of Green Street observed two male subjects burglarizing a professional business office and leave the premises heading down Green Street toward State Street. Within an extremely short period of time, the officer observed the defendant 200 feet from the burgled office and stops to make inquiry. Even assuming that the officer had not seen movement by the defendant consistent with placing objects on the ground, his inquiry of the defendant was certainly proper. The defendant might have seen criminal activity.

5

The defendant might have seen the two male subjects who left the office. The officer could reasonably infer that it was unlikely that a male subject would be undertaking a casual stroll through the neighborhood at 10 minutes to three in the morning notwithstanding the July date. Certainly, anyone within 200 feet of the premises under the circumstances would be appropriate for inquiry by an officer as part of an investigation. However, once the officer saw the objects under circumstances suggesting that he had observed the individual placing the objects on the ground, his suspicions could be further aroused given the nature of the personal property and the time of day. Further, there is nothing to suggest nor has any party cited any law to establish that simply inquiring of an individual of his name and date of birth constitutes a stop or a seizure in the context of placing the individual under the control and limits of a police officer.

Did the officer lack details? Was the officer provided a description of the males observed by the informant? Was a single individual on the sidewalk consistent with two male subjects as reported? All of these are details which would have been necessary in order for the officer to effect the stop or seizure at the outset. However, once the officer observed the defendant in possession of the property there was certainly sufficient articulable suspicion to create in his mind the probability that criminal activity was taking place, activity consistent with the information he had already received.

The entry will be:

For all the reasons described, defendant's motion to suppress is DENIED.

Dated: June 21, 2000

Donald H. Marden
Justice, Superior Court

STATE OF MAINE                                              SUPERIOR COURT
    vs                                                     KENNEBEC, ss.
CHRISTOPHER FIELDS                                         Docket No  AUGSC-CR-1999-00382
2 GROVE STREET  APT. 2
AUGUSTA ME 04330                                           **DOCKET RECORD**

DOB: 04/14/1962
Attorney: SHERRY TASH                          State's Attorney: DAVID CROOK
            APPOINTED 12/28/1999

Filing Document: INDICTMENT                    Major Case Type: FELONY (CLASS A,B,C)
Filing Date: 12/13/1999

Charge(s)

1. BURGLARY                                    07/28/1999 AUGUSTA
   17-A   401(1)              Class C

2. THEFT BY UNAUTHORIZED TAKING OR TRANSFER    07/28/1999 AUGUSTA
   17-A   353                 Class E

3. THEFT BY UNAUTHORIZED TAKING OR TRANSFER    07/27/1999 AUGUSTA
   17-A   353                 Class E

Docket Events:

12/14/1999 FILING DOCUMENT - INDICTMENT FILED ON 12/13/1999

12/14/1999 SUMMONS - SUMMONS TO APPEAR FOR ARRAIGN ISSUED FOR 12/27/1999 @ 9:00

12/14/1999 HEARING - ARRAIGNMENT SCHEDULED FOR 12/27/1999 @ 9:00

           NOTICE TO PARTIES/COUNSEL
12/20/1999 TRANSFER - BAIL AND PLEADING TRANSFERRED ON 12/14/1999

12/20/1999 TRANSFER - BAIL AND PLEADING RECVD BY COURT ON 12/20/1999

12/28/1999 HEARING - ARRAIGNMENT HELD ON 12/27/1999

12/28/1999 HEARING - ARRAIGNMENT DEFENDANT INFORMED OF CHARGES ON 12/27/1999

12/28/1999 HEARING - ARRAIGNMENT COPY OF INDICT/INFO GIVEN ON 12/27/1999

12/28/1999 Charge(s):  1,2,3
           PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 12/27/1999

12/28/1999 MOTION - MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 12/27/1999

12/28/1999 MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 12/28/1999

           COPY TO PARTIES/COUNSEL
01/06/2000 TRIAL - JURY SCHEDULED FOR 02/07/2000 @ 9:00

           NOTICE TO PARTIES/COUNSEL
01/10/2000 BAIL BOND - CASH BAIL BOND FILED ON 01/10/2000

Bail Receipt Type: CR
Bail Amt: $500

Receipt Type: CK
Date Bailed: 08/02/1999       Prvdr Name: GLORIA  FIELDS
                              Rtrn Name: GLORIA  FIELDS

01/14/2000 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 01/14/2000

01/14/2000 MOTION - MOTION TO COMPEL FILED BY DEFENDANT ON 01/14/2000

01/14/2000 MOTION - MOTION FOR EXTENSION OF TIME FILED BY DEFENDANT ON 01/14/2000

           TO FILE PRE-TRIAL MOTIONS
01/14/2000 MOTION - MOTION FOR FUNDS FILED BY DEFENDANT ON 01/14/2000

02/18/2000 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 02/07/2000

02/18/2000 MOTION - MOTION TO CONTINUE GRANTED ON 02/07/2000

           ORDER FILED.  THE COURT HEREBY GRANTS DEFT.'S MOTION FOR CONTINUANCE.  THE CLERK WILL
           PLACE IT ON A FUTURE TRIAL DOCKET AFTER 60 DAYS.  COPIES TO ATTYS.
02/18/2000 MOTION - MOTION FOR FUNDS GRANTED ON 02/07/2000
           DONALD H MARDEN , JUSTICE
           ORDER FOR FUNDS GRANTED SUBJECT TO CONDITIONS AND LIMITATIONS IN THE ORDER.  COPIES TO
           ATTYS.
03/16/2000 TRIAL - JURY CONTINUED ON 02/07/2000

06/16/2000 MOTION - MOTION TO COMPEL GRANTED ON 06/12/2000

           W/O OBJECTION IN OPEN COURT S/MARDEN, J.
06/16/2000 HEARING - MOTION TO SUPPRESS HELD ON 06/12/2000
           DONALD H MARDEN , JUSTICE
           Attorney:  SHERRY TASH

           DA:  EVERT FOWLE        Reporter: CASE ENOCH
           Defendant Not Present in Court
06/16/2000 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 06/12/2000

           FILE WITH JUSTICE MARDEN
06/26/2000 MOTION - MOTION TO SUPPRESS DENIED ON 06/21/2000
           DONALD H MARDEN , JUSTICE
           COPY TO PARTIES/COUNSEL                                          DEFENDANT'S
           MOTION TO SUPPRESS IS DENIED.  S/MARDEN

A TRUE COPY
ATTEST: _____
                    Clerk