**STATE of Maine**

v.

**William SILVA, et al.**

Supreme Judicial Court of Maine.
Argued Nov. 7, 1985.
Decided May 21, 1986.

Paul Aranson, Dist. Atty. (orally), Portland, for plaintiff.

Mittel & Hefferan, Paul Eggert, (orally), Portland, for William Silva.

Russell B. Boisvert, (orally), Bridgton, for Cheryl Silva.

Before NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ., and WERNICK, A.R.J.

ROBERTS, Justice.

█ The State has appealed pursuant to 15 M.R.S.A. § 2115 (1980) an order of the Superior Court, Cumberland County, granting the defendants' motion to suppress evidence.[1] The State contends that the court erred in its determination that a marijuana patch on property of William and Cheryl Silva was entitled to federal fourth amendment protection. We affirm the decision of the Superior Court.

Acting upon a tip from an unnamed informant and confirmation from an aerial surveillance, Officer Madura of the Bridgton Police Department went to the vicinity of the Silva home. By walking along an old stone wall without entering the Silva property, Madura was able to observe marijuana plants growing on the defendants' property. A carefully cultivated plot contained a number of marijuana plants, some in excess of five feet tall. The officer climbed over the wall and eventually seized the marijuana.

The hearing court found as follows:

The small marijuana patch in this case was located roughly 250 feet behind defendants' house. It was located within a cultivated lawn extending from the house to a tree-studded bog just beyond the marijuana patch. A cultivated nature path extended further into the woods from the lawn on the westerly side of the patch for a considerable distance beyond the patch between two bogs. A swath of trees stood between the marijuana patch and the house but

---

1. Although the court granted the motion, no order specifically granting affirmative relief was entered. We again remind court and counsel that "Motion granted" is an inadequate order.

the swath was not long enough to cut the back lawn completely in half. This large back lawn was dotted with fruit trees, fruit bushes, two gardens (for less exotic plants), a shed and flowers.

The court decided that the area was within the curtilage of the Silva home and "entitled to constitutional protection."

■ In the Superior Court and before us, the State and the defendants agree that the critical question is whether the marijuana patch was "open field" or "within the curtilage." We take their formulation as merely another way of stating the question whether the marijuana patch was entitled to protection against unreasonable searches and seizures under the fourth amendment.[2] Officer Madura's observation of the contraband from the adjoining property involved no unconstitutional search. *State v. Peakes*, 440 A.2d 350, 352–53 (Me.1982). Without exigent circumstances or other fourth amendment justification, however, the officer's observation does not authorize a warrantless intrusion into a constitutionally protected area. As the Supreme Court has observed "[t]he plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer *whose access to the object has some prior Fourth Amendment justification* ...." *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983) (emphasis added). Thus, the fact that contraband is in open view must be distinguished from "plain-view" authorization for seizure. Because the State offers no justification for the intrusion onto the defendants' property, we conclude that the parties correctly postured the issue presented to the trial court.

■ The State concedes that the factual findings of the trial court are supported by the evidence. The State contends that those facts are insufficient to support the court's legal conclusion. The specific factors cited in support of the State's argu-

ment are (1) distance from the dwelling, (2) absence of any outbuilding and (3) nature of the use of the area. We conclude that the State's reliance upon these factors is unwarranted and that none compels a determination contrary to that of the trial court.

■ A table of cases cited in *United States ex rel. Saiken v. Bensinger*, 546 F.2d 1292, 1296 (7th Cir.1976), purports to demonstrate that 75 feet is the point of demarcation between curtilage and open fields. Our review of those cases, however, suggests that the presence or absence of intervening fences and other topographical features was of greater significance than distance alone. We recognize that many cases involve a search of outbuildings and, therefore, a determination whether the structure was within the curtilage. That is not to say, of course, that the absence of any structure demonstrates that an area is beyond the curtilage. Finally, we note that the nature of the use made of the area by the defendants, although not compelling, is consistent with the trial court's decision.

We are persuaded that among the disparate federal opinions on the subject, the reasoning of the Fourth Circuit in *United States v. Van Dyke*, 643 F.2d 992 (4th Cir.1981), is most cogent. The officers in *Van Dyke* had walked through trees growing along the property line, climbed a fence and lay down in a patch of honeysuckle bordering a mowed lawn 150 feet from the dwelling. The court overruled a trial court decision, concluding that the area within the fence was entitled to fourth amendment protection.

The Fourth Circuit expressly considered and rejected the 75-foot per se rule of *Bensinger* and quoted with approval the following language:

Whether the place searched is within the curtilage is to be determined from the

---

2. The principle that "open fields" are not protected by the fourth amendment was announced in *Hester v. United States*, 265 U.S. 57, 44 S.Ct.

445, 68 L.Ed.2d 898 (1924), and reaffirmed in *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family.

*Van Dyke*, 643 F.2d at 994 (quoting *Care v. United States*, 231 F.2d 22, 25 (10th Cir.1956)). The trial court in the case before us expressly applied the above-quoted definition. With the exception of the greater distance from the dwelling, the circumstances in the case before us are substantially like those in *Van Dyke*. Equally applicable is the observation of the Fourth Circuit that

[a]ssuming that sheer distance could in some instances lead us to conclude that a particular area was outside the curtilage even though inside a fence surrounding a residence, this case does not present such a situation.

*Van Dyke*, 643 F.2d at 994. We conclude, therefore, that the State has not demonstrated any error in the court's determination that Officer Madura's intrusion beyond the rock wall to seize the marijuana plants violated the rights of the defendants under the fourth and fourteenth amendments to the United States Constitution.

The entry is:

Judgment affirmed.

All concurring.