**STATE of Maine**

v.

**Douglas E. PEASE, Jr. and Douglas E. Pease, Sr.**

Supreme Judicial Court of Maine.

Argued Nov. 13, 1986.
Decided Jan. 22, 1987.

John R. Atwood, Dist. Atty., James E. Diehl (orally), Asst. Dist. Atty., Rockland, for plaintiff.

Samuel G. Cohen (orally), Waldoboro, for defendant.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

GLASSMAN, Justice.

Douglas Pease, Sr. and Douglas Pease, Jr. appeal from judgments of the Superior Court, Knox County, entered on their conditional pleas of guilty of possession of a deer in closed season in violation of 12 M.R.S.A. § 7406(1) (1981 & Supp.1986). On appeal, they contend the District Court, Rockland, erred in denying the defendants' motions to suppress certain evidence that they claim was seized or discovered by law enforcement officers in violation of the fourth amendment to the United States Constitution. We affirm the judgments.

## I.

Approximately three weeks after the close of the season for hunting deer, the Department of Inland Fisheries and Wildlife received information that Douglas Pease, Sr. was in possession of a deer killed out of season. Warden Dorian checked the Pease property by taking a circuitous route through woods and fields to arrive at a wooded area behind Pease's house and garage. Observing nothing unusual, he left by the same route. Later that day, in pursuit of a plan to allow him to observe Douglas Pease, Sr. in possession of the deer, Dorian followed the same route and stationed himself in the same area. Within a few minutes he observed three individuals pass his view and disappear into a wooded area. A short time later, he heard someone say, "Look at the horns on those deer" and heard a scraping sound. The defendants passed directly in front of him dragging a dead deer toward the rear of the Pease house where several vehicles were parked. Dorian immediately pursued the defendants. As the defendants approached the rear of the Pease house, Dorian placed them under arrest and seized the deer.

Both defendants filed motions to suppress all physical evidence seized by Dorian and any statements made by the defendants, claiming the search and seizure without a warrant was in violation of the fourth amendment to the United States Constitution. The court denied the motions. The cases were transferred to the Superior Court. After entry of judgments on the defendants' conditional pleas of guilty, the cases were consolidated for appeal.

## II.

On appeal, the defendants contend, as they did before the District Court, that Dorian was within the curtilage of the Pease home at the time he first observed the defendants and that the fruits of the warrantless search and seizure must be suppressed.

The curtilage is that area included within the general enclosure surrounding the dwelling. Its use and enjoyment is an adjunct to the domestic economy of the family. The reach of the curtilage depends on the facts in each case. *See Rosencranz v. United States*, 356 F.2d 310, 313 (1st Cir. 1966). *See also United States v. Van Dyke*, 643 F.2d 992, 994 (4th Cir.1981) (officers within an enclosing fence and 15 feet from mowed lawn were within the curtilage); *Fullbright v. United States*, 392 F.2d 432 (10th Cir.1968) (site of officer's surveillance not within the yard or enclosure related in use or purpose to the house or outbuildings).

An individual has a reasonable expectation of privacy within the curtilage. *Oliver v. United States*, 466 U.S. 170, 177–180, 104 S.Ct. 1735, 1740–1742, 80 L.Ed.2d 214 (1984). Entry into the curtilage by law enforcement officers to search for or seize evidence generally requires a search warrant. *See United States v. Cresta*, 592 F.Supp. 889, 899 (D.Me.1984).

An "open field" is that area outside the curtilage. *Oliver*, 466 U.S. at 178, 104 S.Ct. at 1741. There is no reasonable expectation of privacy by the owner in an "open field", and a warrantless entry upon it by a law enforcement officer does not violate the fourth amendment. *Id.* at 178, 104 S.Ct. at 1741. The fact that the officer may be trespassing is of no relevance to the application of the fourth amendment. *Id.* at 183, 104 S.Ct. at 1743.

The defendants do not contend that they were in a different area than Dorian when first observed by him. Instead, they contend that at that particular time, Dorian was within the curtilage. They point to the testimony of Douglas Pease, Sr. that the day following his arrest he found footprints in the snow[1] that he believed to be

---

1. The events took place on December 18th. Both Dorian and Douglas Pease, Sr. testified that there was snow on the ground.

Dorian's, approximately 12 to 15 feet behind the garage. He had, however, made no attempt to trace the footprints to determine the direction of entry or their point of origin. The evidence also disclosed that the Pease property was not fenced or posted. The house and detached garage were in an open area facing a public road and on the remaining three sides surrounded by woods of varied density. Dorian testified he had stationed himself some 30 to 40 feet within the tree line of woods located to the right rear of the buildings and approximately 100 feet behind the garage, where he remained until his pursuit of the defendants. The District Court's finding that Dorian was not within a constitutionally protected area when he first observed the defendants with the deer is amply supported by the record. *State v. Harriman,* 467 A.2d 745 (Me.1983).

### III.

The defendants also contend that even though Dorian's position in an open field is constitutionally permissible, the fourth amendment required that Dorian secure a warrant prior to entering the curtilage to arrest the defendants and seize the deer. We disagree.

In *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), the Court reversed the trial court's order suppressing from evidence heroin and money seized during and after the arrest of the defendant. The Court held that law enforcement officers may engage in fresh or "hot pursuit" of an individual from a public place into a private place that has fourth amendment protection when there is probable cause to arrest the individual and once arrested a search and seizure incident to the arrest is clearly justified. *Id.* at 43, 96 S.Ct. at 2409. *See also Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (right of police who had probable cause to believe armed robber had entered house few minutes before, to make warrantless entry to arrest robber and search for weapons). The pursuit must be immediate and fairly continuous from the scene of the crime. *Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984).

Here, because the crime was committed in his presence, Dorian could arrest the defendants without a warrant. 17-A M.R.S.A. § 15(1)(B). Dorian's fresh or "hot pursuit" of the defendants from without the curtilage to within the curtilage to effect an arrest for that crime justified the warrantless entry and arrest. The record also discloses that Dorian had a realistic expectation that any delay would result in the evidence of the deer being transferred from the defendants' possession or destroyed. *Santana,* 427 U.S. at 43, 96 S.Ct. at 2409.

Once Dorian arrested the defendants he could seize the dead deer as evidence seized pursuant to a lawful arrest. *United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973); *United States v. Moore,* 790 F.2d 13, 16 (1st Cir.1986).

The entry is:

Judgments affirmed.

All concurring.