**STATE of Maine**

v.

**Stephen SNOW.**

Supreme Judicial Court of Maine.

Argued May 1, 1987.
Decided July 1, 1987.

James E. Tierney, Atty. Gen., Margaret B. McCloskey (orally), Asst. Atty. Gen., Augusta, for the State.

Gene R. Libby (orally), Verrill & Dana, Kennebunk, for defendant.

Before McKUSICK, C.J., and ROBERTS,* WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

The defendant, Stephen Snow, appeals a judgment entered following a non-jury trial in the Superior Court, Cumberland County, finding him guilty of possession of lobsters on a boat rigged for otter trawling, 12 M.R.S.A. § 6952 (Supp.1986) (Class E), possession of oversize lobster meat, 12 M.R.S.A. § 6858(1) (1981) (Class E), and possession of mutilated lobster tails, 12 M.R.S.A. § 6858(2) (1981) (Class E). The defendant contends that the District Court, Portland, clearly erred in finding probable cause to permit the warrantless seizure of two cloth bags of frozen lobster meat. The defendant further contends that the evidence was insufficient to convict him of the crimes charged. Finding no error, we affirm.

At around 8:00 p.m. on January 11, 1986, Sergeant Joe Fessenden of the Department of Marine Resources was on board a vessel at Custom House Wharf in Portland. Fessenden saw the *Sea Lion IV* enter the harbor. Sometime in December, 1985, a confidential informant, who in the past had provided him with reliable information, had told Fessenden that a number of large, off-shore draggers, including the *Sea Lion IV*, were landing illegally procured lobster meat. The informant had obtained this information from other fishermen on the waterfront. Another fisherman, who had recently seen the *Sea Lion IV* in the Gulf of Maine, had reported to Fessenden that the vessel was fishing an area where lobster could be found.

Fessenden and another marine patrol officer promptly drove to Portland Fish Pier and hid behind a truck to watch the *Sea Lion IV* as it came alongside the pier. They watched Kent Bowley, whom Fessenden recognized, disembark from the bow and saw him "peering" up and down the length of the dock.

Two men on board, later identified as John DeMarco and John Lyon, passed Bowley a white laundry bag which Bowley placed near some pumps about 15 feet away. Bowley returned to the bow of the vessel and DeMarco and Lyon handed up a dark-colored army-type duffel bag. The men had obvious difficulty handling the bag which appeared to be quite heavy. Bowley "lugged" the bag along the dock and placed it next to the white laundry bag. Bowley then got back on the vessel and Lyon got off, rapidly heading toward the shore.

Bowley's behavior aroused the suspicions of Fessenden who in his career as a marine patrol officer had before encountered situations in which illegally procured lobster meat was taken off vessels in laundry and duffel bags. Suspecting that Lyon intended to get a vehicle to pick up the bags Fessenden, who was in uniform, quickly ran to Lyon, identified himself as a marine patrol officer and ordered him to stand by for inspection. Stooping, Fessenden quickly felt the exterior of the white laundry bag and found its contents were solid and

* Roberts, J., sat at oral argument and participated in the initial conference, but participated no further.

fleshy. Leaving the other officer to watch Lyon and the bags, Fessenden ran on to stop the *Sea Lion IV*, which had cast off lines, from leaving.

Fessenden stopped about 5 feet from the bow and yelled several times, "Marine patrol, stand by for inspection." The vessel's diesel engines were running. Bowley, who was standing with DeMarco on the bow, gestured as if to indicate that he could not hear what Fessenden was saying. Fessenden thought Bowley was feigning inability to hear. Fessenden also saw someone whom he could not identify directly looking at him from the wheelhouse. The *Sea Lion IV* then left the dock with a roar.

Fessenden returned to Lyon who identified the people on board at Fessenden's request.[1] Fessenden then asked Lyon how many pounds of lobster meat were in the bags. Lyon responded, "About eighty." Fessenden asked how many were oversize. Lyon responded, "They're all frozen." Meanwhile, the *Sea Lion IV* had motored to the middle of the harbor, paused briefly and then headed for neighboring Union Wharf. Fessenden sent the other marine patrol officer to intercept the *Sea Lion IV* at Union Wharf. Fessenden watched the vessel come into Union Wharf, then he picked up the two bags and, accompanied by Lyon, went there himself in a vehicle sent for him.

Two marine patrol officers, one of whom was the one Fessenden sent, boarded the *Sea Lion IV* when it docked at Union Wharf. Arriving at Union Wharf, Fessenden boarded the *Sea Lion IV* and in the wheelhouse spoke to the defendant, who identified himself as the captain. Upon being informed that he was going to be charged with possession of illegally procured lobster meat the defendant denied knowing about it. Fessenden asked the defendant whether he wanted to see the evidence, and, receiving an affirmative an-

swer, Fessenden led him to the vehicle containing the two bags, opened them, and poured out frozen lobster meat packaged in transparent plastic freezer bags.

The District Court explicitly found both probable cause and exigent circumstances, and denied the defendant's motion to suppress the bags and their contents as the result of an unlawful seizure. The case was transferred to the Superior Court for trial.

The *Sea Lion IV* was described at trial as a western rigged stern dragger about 70 feet long and rigged for otter trawling. Though there was no net on the drum or reel when Fessenden boarded it at Union Wharf, there was a net on board. Moreover, the vessel was equipped with a stove, refrigerator, pots, pans and a chest freezer. The two bags were determined to have contained a total of 100 pounds of lobster meat, consisting of tails, knuckles and claws. There were about 200 tails, 13 of which were oversize and 26 of which had been mutilated. All the meat had been cooked, placed in plastic bags and frozen.

The court, sitting without a jury, concluded that, although the defendant did not have actual possession of the lobster meat, he had constructive possession within the meaning of the statute.[2] The court concluded that because the lobster meat had been cooked and processed on board the defendant, as captain, must have been aware of its existence. The court then found the defendant guilty of all three counts charged. The defendant has seasonably appealed.

### I.

The defendant contends on appeal that the trial court clearly erred in finding that Fessenden had probable cause justifying the warrantless seizure of the two bags containing processed lobster meat under

---

1. At the suppression hearing in the District Court Fessenden testified without objection that Lyon at this point had identified Bowley and DeMarco as the crew members and the defendant as the captain. At trial in the Superior Court the defendant stipulated that he was one of the four persons on board the *Sea Lion IV*.

2. Title 12 M.R.S.A. § 6001 (34–A) (Supp.1986) defines "possession" as "to have in one's custody or control, either personally or by another who is under one's control."

the "exigent circumstances" exception to the fourth amendment. We disagree.

As a general rule, the warrantless seizure of personal property is per se unreasonable under the fourth amendment. *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983). Nevertheless, where law enforcement personnel have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, they may seize the property, pending issuance of a warrant to examine its contents, if exigent circumstances require it or some other recognized exception to the warrant requirement exists. *Id.; see also Colorado v. Bannister*, 449 U.S. 1, 3–4, 101 S.Ct. 42, 43, 66 L.Ed.2d 1 (1980) (per curiam); *Arkansas v. Sanders*, 442 U.S. 753, 761, 99 S.Ct. 2586, 2591, 61 L.Ed.2d 235 (1979). Probable cause exists when the officers' personal knowledge of facts and circumstances, in combination with any reasonably trustworthy information conveyed to them, would warrant a prudent person to believe that the container seized holds either contraband or evidence of a crime. *See State v. Libby*, 453 A.2d 481, 484–85 (Me.1982); *State v. Smith*, 379 A.2d 722, 724 (Me.1977). On appeal, the trial court's finding of probable cause will be reversed only if "clearly erroneous." *State v. Moulton*, 481 A.2d 155, 163 (Me.1984); *Smith*, 379 A.2d at 724.

Ample competent evidence supports the trial court's finding of probable cause. From a known informant who had previously proved reliable, Fessenden received word in December 1985 that the *Sea Lion IV* was landing illegally procured lobster meat. Fessenden had also received word from an eyewitness that the *Sea Lion IV* was recently fishing an area where lobster could be found. Fessenden's observations on the evening of January 11, 1986, provided corroborative data. Bowley behaved furtively as he off-loaded the two bags. The green duffel bag was unusually heavy

and awkward, requiring the combined efforts of DeMarco and Lyon to lift to Bowley on the pier. As Fessenden rushed to detain the *Sea Lion IV* he stopped and, feeling the outside of the bag, noted that its contents felt fleshy. Then despite Fessenden's proximity to the bow of the vessel, making it highly unlikely that his shouted demands to stand by could be misconstrued, the vessel left the pier. Finally, in response to Fessenden's questions, Lyon effectively acknowledged that the bags contained lobster meat. Only then did Fessenden seize the bags. On this record we cannot say that the trial court's finding was clearly erroneous.[3]

## II.

The defendant also challenges the sufficiency of the evidence to support the verdict. The standard to be applied to determine whether evidence is sufficient to support a conviction is whether, based on that evidence viewed in the light most favorable to the prosecution, any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged. *State v. Barry*, 495 A.2d 825, 826 (Me.1985). Having closely examined the record we are satisfied that competent evidence supports the court's verdict.

The entry is:

Judgment affirmed.

All concurring.

---

[3]. The defendant has not challenged on appeal the trial court's finding of exigent circumstances. Nor has the defendant denied that he consented to the search that occurred when he accompanied Fessenden to the vehicle and Fessenden poured out the contents of the two bags he had earlier seized. *See generally State v. Fredette*, 411 A.2d 65 (Me.1979).