STATE of Maine

v.

Paul WING and Patricia Magagnoli.

STATE of Maine

v.

Blaine A. RICHARD.

Supreme Judicial Court of Maine.

Argued Jan. 18, 1989.
Decided June 2, 1989.

James E. Tierney, Atty. Gen., Wayne S. Moss (orally), Asst. Atty. Gen., Augusta, for the state.

John D. Pelletier (orally), Goodspeed & O'Donnell, Augusta, for Paul Wing.

Walter T. Ollen, Jr., Farris & Susi, Gardiner, for Patricia Magagnoli.

P.J. Perrino, Jr. (orally), Augusta, for Blaine A. Richard.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

GLASSMAN, Justice.

The Kennebec County Grand Jury returned indictments against Paul Wing, Patricia Magagnoli, Blaine Richard, and Karen Randall. Paul Wing and Patricia Magagnoli were indicted on identical two-count indictments charging them with unlawful trafficking in marijuana in violation of 17–A M.R.S.A. § 1103 (1983 & Supp. 1988) and unlawful furnishing of marijuana in violation of 17–A M.R.S.A. § 1106 (1983 & Supp.1988). Blaine Richard was indicted on six counts including: unlawful trafficking in cocaine in violation of 17–A M.R.S.A. § 1103; unlawful possession of cocaine in violation of 17–A M.R.S.A. § 1107 (1983); unlawful trafficking in marijuana in violation of 17–A M.R.S.A. § 1103; unlawful furnishing of marijuana in violation of 17–A M.R.S.A. § 1106; unlawful trafficking in hashish in violation of 17–A M.R.S.A. § 1103; and unlawful possession of hashish in violation of 17–A M.R.S.A. § 1107. Karen Randall is not a party to this appeal.

All three defendants pleaded not guilty to the charges and filed motions to suppress all evidence obtained from a search of the residential premises of Wing and Richard.[1] The Superior Court (Kennebec County, *Lipez, J.*) granted the motions to suppress filed by defendants Wing and Magagnoli[2] and denied the motion filed by Richard. In this consolidated appeal the State appeals from the decision granting Wing and Magagnoli's motions to suppress, and Richard appeals his conviction challenging the denial of his motion to suppress. We affirm the orders as to Wing and Magagnoli by an evenly divided court and affirm the judgment as to Richard.

### I.

The record discloses the following: In response to an informant's tip about the possible cultivation of marijuana plants behind the residence of Blaine Richard, Kennebec County Deputy Sheriffs Paul A. Ferland and Gregory Lumbert rented an air-

craft for the aerial surveillance of the area. During the flyover, the officers observed a green, leafy substance that they believed to be marijuana plants growing in a cultivated area which they believed to be on the property of Richard. The officers did not observe anyone in the area. After landing the plane on a nearby lake, the officers met Chief Daniel McGinley of the Monmouth Police Department for the purpose of driving to the area viewed from the plane. They passed the driveway to the Richard property and entered the driveway of property later determined to be owned by Wing.

The Wing property consists primarily of wooded land enclosing a clearing that contains a house, garage and landscaped lawn area which are not visible from the road. Wing's curved driveway, several hundred feet long, divides into a "Y" at a point approximately 100 feet from the road with the left branch leading to the Wing residence and the right branch leading to the garage and landscaped lawn area. The garage is approximately 100 feet from the house and the lawn area is near the garage on the side further from the house. The lawn area contains a gazebo, barbecue pit, shed, garden, picnic tables and lawn chairs. Neither the garage nor the lawn area is visible from the house. Due to an upgrade in the right branch of the driveway the lawn area is not visible until after the "Y" intersection. The officers drove up the right branch, parked the car at the end of the driveway in a grassy area, and saw marijuana plants interspersed in a vegetable garden located in Wing's lawn area. This garden had not been observed from the air.

Approximately 30 feet from the Wing–Richard property line, Officers McGinley and Ferland located the garden with marijuana plants Ferland had seen during the aerial surveillance. It was later determined that this garden was on Richard's property. A well beaten path led from this garden through a wooded area to the Rich-

---

1. Prior to this appeal, Richard entered a conditional plea of guilty to his indictment pursuant to M.R.Crim.P. 11(a)(2).

2. The standing of Magagnoli to make a fourth amendment violation claim has not been challenged by the State. Accordingly, we express no opinion on that matter.

ard house. From a knoll approximately 50 feet behind this garden Deputy Ferland observed two gardens with marijuana plants in close proximity to Richard's residence. Neither of the gardens was enclosed in any way.

Additional officers from the Kennebec County Sheriff's Department arrived and were directed to secure both the Wing and Richard residences while Deputies Ferland and Lumbert secured a search warrant for the properties. Wing returned to his residence with Magagnoli, and Richard arrived with Karen Randall at the Richard residence while the deputies were securing the warrant. On the return of the deputies with a warrant, both the Wing and Richard residences and other buildings and vehicles present at the premises were searched, evidence was seized, and the marijuana plants were harvested.

The trial court found that the officers entered into the curtilage of Wing's home prior to the issuance of the warrant and suppressed all of the evidence obtained from the search of the Wing property. The court further determined that without the information derived from that illegal entry into the Wing curtilage the affidavit was insufficient to support the issuance of a warrant for a search of the Wing premises. The State challenges both of the trial court's findings. Because the court is evenly divided as to whether the trial court properly suppressed the evidence, we affirm.

## II.

On his appeal Richard contends that because prior to the issuance of the search warrant the officers entered into the curtilage of his home, the description contained in the search warrant for the property seized was not sufficiently specific, and the warrant affidavit contained reckless or intentional material misstatements, the trial court erred in denying his motion to suppress the evidence seized from his premises. We disagree.

**3.** In the *Dunn* case the Court set forth four factors as "useful analytical tools": proximity of area claimed to be curtilage to the home, whether area included in enclosure surrounding

Richard first contends that in applying the factors set forth in *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987),[3] the Superior Court could not find that the officers entered into the Wing curtilage without also finding that the officers entered into the Richard curtilage. This argument is without merit. We have previously stated that the reach of the curtilage of a home depends on the facts in each case. *State v. Pease*, 520 A.2d 698, 699 (Me.1987); *see also State v. Silva*, 509 A.2d 659, 661 (Me.1986). The marijuana patch observed in the flyover by the deputies was some distance away and separated from the Richard residence by a wooded area through which a path led toward the residence. At a point nearby the deputies observed another marijuana patch located approximately 139 feet to the northeast of the Richard residence. A third patch was located approximately 60 feet northwest of the Richard residence and separated from the residence by a gully and wooded area. There was evidence that there was no cultivation of a grassy area or any other indicia of domestic uses in or around either of the three marijuana patches. Based on this evidence the trial court was warranted in determining that the three marijuana patches were not observed by the police from within an area protected by the fourth amendment. *See United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); *State v. Pease*, 520 A.2d at 699.

Richard next contends that the search warrant was defective because it provided only a generic description of the property to be seized. We have stated:

A search warrant must describe the items to be seized with a particularity that will enable the searching police officer to identify them with certainty. Such particularity discourages general searches and prevents the unauthorized seizure of property under the mistaken belief that it falls within the authorization of the warrant.

home, nature of uses of area, and steps taken to protect area from observation of passers by. *Id.* at 301.

*State v. Sweatt,* 427 A.2d 940, 949 (Me. 1981).

The search warrant identified the articles sought as: "Marijuana, drugs, drug paraphernalia, drug records, and any evidence associated with drug trafficking as is more fully described in the attached affidavit of Paul A. Ferland...." Ferland's affidavit further listed items, all alleged to be related to the sale, acquisition or distribution of controlled drugs and contraband. The trial court properly determined that because the goods described in the warrant and affidavit are contraband, or directly related to the sale, distribution or acquisition of contraband, the generic description was appropriate. *See State v. Sweatt,* 427 A.2d at 949 ("Generic descriptions are permissible only when the affidavits establish that any of the generically described goods found at the searched premises 'were likely to have been stolen and constituted a dominant part of the goods on the premises.'" (quoting *United States v. Abrams,* 615 F.2d 541, 545 (1st Cir.1980))).

 Richard further argues that because the car was not sufficiently described in the search warrant, the seizure of Richard's cocaine from Karen Randall's car was illegal.[4] The evidence disclosed that police officers had observed the car driven by Richard with the owner, Karen Randall, as a passenger, arrive on the Richard premises prior to the issuance of the warrant. Under the circumstances, the description "motor vehicles on the premises" in the warrant is sufficiently particular to pass constitutional scrutiny and permit the search of Karen Randall's car. *See United States v. Asselin,* 775 F.2d 445, 446–47 (1st Cir.1985) (warrant authorizing search of premises with trailer and attached carport sufficient to cover search of car parked adjacent to carport) (citing *United States v. Napoli,* 530 F.2d 1198, 1200–1201 (5th Cir. 1976) (camper vehicle parked in driveway included in "premises")).

 Nor do we find any merit in Richard's final contention of alleged misstatements in the warrant affidavit. Under

*Franks v. Delaware,* 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684–85, 57 L.Ed.2d 667 (1978), if a warrant affidavit contains false statements that were made recklessly or intentionally, the statements must be excised from the affidavit prior to an evaluation of whether the remaining information supports a finding of probable cause. There is competent evidence in the record to support the trial court's findings that the misstatements contained in the affidavit were at most negligent misstatements and were nonetheless immaterial to the probable cause determination of the complaint justice. *See State v. White,* 391 A.2d 291 (Me.1978).

The entry is:

Orders of the Superior Court granting Paul Wing's and Patricia Magagnoli's motions to suppress affirmed by an evenly divided court. Judgment of conviction of Blaine A. Richard affirmed.

---

**4.** We assume, without deciding, that Richard had standing to raise this issue.