STATE of Maine

v.

Michael CAYER.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 4, 1992.
Decided Dec. 2, 1992.

Neale T. Adams, Dist. Atty. and John M. Pluto, Deputy Dist. Atty., Caribou, for the State.

Richard K. Dubois, Madawaska, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Michael Cayer appeals from his conviction of unlawful trafficking in marijuana, in violation of 17–A M.R.S.A. § 1103 (1983 & Supp.1991), entered in the Superior Court (Aroostook County, *Pierson, J.*).[1] Cayer alleges that his fourth amendment rights were violated by the use of evidence obtained as a result of an unreasonable search of an area within the curtilage to his home. Cayer's motion to suppress was denied after a hearing in the Superior Court. We affirm the judgment of the Superior Court.

---

1. Cayer entered a conditional plea of guilty to his indictment pursuant to M.R.Crim.P. 11(a)(2).

On May 23, 1991, State Trooper Kim Espling received information of possible marijuana cultivation near the Parent Road in Van Buren. Specifically, Espling was informed that there was a trailer located just off the Parent Road next to the railroad tracks, that a yellow van was parked in a wooded area some distance in back of that trailer, and that some marijuana plants were growing near the van. Espling also received information that an employee of the Bangor & Aroostook Railroad had reported to the police that marijuana plants were growing in that area.

As a result of this information, Espling proceeded to Van Buren where Espling met with B.I.D.E. agent Barry Estabrook. The two then drove to Parent Road where they observed the trailer and a vehicle parked in the driveway. A check of the vehicle's license plate number revealed that the vehicle belonged to Cayer.

While walking along the railroad tracks, Espling and Estabrook observed a yellow van parked in a wooded area about 600 to 700 feet from the Parent Road. Approximately 426 feet from the trailer, Espling and Estabrook saw approximately 100 marijuana plants set alongside the van. After photographing the plants, Espling moved to a position approximately 60 feet from the yellow van, where Espling observed Cayer working with the plants. Espling then arrested Cayer.

On appeal, Cayer contends that because the area searched was within the curtilage of his residence, the warrantless entry by law enforcement officials constituted an unreasonable search and seizure in violation of both the Maine and United States Constitutions.

■ The right of all persons to be protected from unreasonable searches and seizures is guaranteed by the fourth amendment of the United States Constitution. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend IV.[2] The United States Supreme Court, in *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), recognized that fourth amendment protection extends to the curtilage, the area immediately surrounding and associated with the home. *Id.* at 180, 104 S.Ct. at 1742. In *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), the Court set forth four factors as "useful analytical tools" to aid in determining the reach of the curtilage: (1) proximity of area claimed to be curtilage to the home; (2) whether area claimed to be curtilage is included within an enclosure surrounding the home; (3) nature of the uses to which the area is put; and (4) steps taken by the resident to protect the area from observation by people passing by. *Id.* at 301, 107 S.Ct. at 1139–40.

■ We have previously stated that the reach of the curtilage of a home depends on the facts of each case. *See State v. Wing*, 559 A.2d 783, 785 (Me 1989), *cert. denied* 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 317 (1989); *State v. Pease*, 520 A.2d 698, 699 (Me.1987). In *State v. Wing*, we applied the *Dunn* factors and concluded that the trial court was warranted in finding that the three marijuana patches on the defendant's property were not within the curtilage to his home and, therefore, not protected by the fourth amendment from police observation. *Wing*, 559 A.2d at 785. We relied on evidence that the first patch, observed during aerial surveillance, was some distance away and separated from the defendant's residence by a wooded area. *Id.* The second and third patches were located approximately 139 feet and 60 feet from the defendant's residence, and were also separated from the residence by a gully and wooded area. *Id.* Finally, there was no evidence indicating that the area claimed to be within the curtilage was put to any domestic uses. *Id.*

---

**2.** The Maine Constitution similarly provides that "The people shall be secure in their persons, houses, papers and possessions from all unrea-

sonable searches and seizures...." Me. Const. art. I, § 5.

■ Similarly, application of the *Dunn* factors to the present case confirms the court's determination that the area searched by Espling and Estabrook does not fall within the curtilage to Cayer's home. First, Cayer's marijuana patch was located approximately 426 feet from his mobile home trailer, a distance significantly farther than that in *Wing*. Furthermore, the area between Cayer's home and the marijuana patch consisted primarily of woods and open fields. Finally, Cayer took no affirmative steps to enclose the area to protect it from intrusion or observation by people passing by, such as railroad employees. In short, the area Cayer claims to be within the curtilage to his home does not "harbor[ ] the intimate activities associated with the sanctity of a home and the privacies of life." *See State v. Martin*, 553 A.2d 1264, 1264 (Me.1989) (citing *United States v. Dunn*, 480 U.S. 294, 299–301, 107 S.Ct. 1134, 1138–40, 94 L.Ed.2d 326 (1987)).

■ Cayer cannot claim a "constitutionally protected reasonable expectation of privacy" in the area searched. *See Oliver v. United States*, 466 U.S. 170, 177, 104 S.Ct. 1735, 1740–41, 80 L.Ed.2d 214 (1984); *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516–17, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *State v. Bridges*, 513 A.2d 1365, 1367–68 (Me.1986). "[A]n individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *See Oliver v. United States*, 466 U.S. at 178, 104 S.Ct. at 1741; *see also Hester v. United States*, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924). Therefore, we conclude that the Superior Court was warranted in determining that the area searched was not within an area protected by the fourth amendment.

The entry is:

Judgment affirmed.

All concurring.