1999 ME 136

STATE of Maine

v.

**Joseph LUX.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 17, 1999.

Decided Sept. 16, 1999.

Andrew Ketterer, Atty. Gen., Lea–Anne Jameson, Asst. Atty. Gen., Augusta, for State.

Terri M. Kossoff, Westbrook, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

SAUFLEY, J.

[¶ 1] Joseph Lux appeals from a judgment entered in the Superior Court (Cumberland County, *Crowley, J.*) following a bench trial convicting him of possession of a firearm by a felon (Class C), 15 M.R.S.A. § 393 (1980 & Supp.1998). Lux contends that the Superior Court (Cumberland County, *Perkins, A.R.J.*) erred in denying his motion to suppress all evidence seized

as a result of the stop and search of his vehicle. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Lux challenges only the denial of his motion to suppress. At the hearing on that motion, the State presented two witnesses, John Dumas and Richard Vogel, both of whom were employed by the Maine Drug Enforcement Agency. Lux presented no witnesses.

[¶ 3] Dumas and Vogel testified generally to the following facts. On December 3, 1997, they went to the apartment of Scott Stolkner, at the Forest Park apartment complex, to execute an outstanding arrest warrant. Upon arrival, they interrupted a drug transaction and arrested Scott Stolkner.

[¶ 4] Five days later, on December 8, Agent Vogel received a phone call from a confidential informant who had given him reliable information in the past. The informant had been told by Stolkner's girlfriend, who lived with Stolkner in the same apartment, that she had picked up ten pounds of marijuana from an individual known to the agents to be involved in drug trafficking, and that she was going to deliver it to another individual who had been prosecuted on marijuana-related charges in the past. The informant identified Stolkner's girlfriend by name, identified the supplier of the marijuana by name, and identified the person to whom Stolkner's girlfriend expected the marijuana to be delivered. Vogel and Dumas were familiar with each named individual as being involved in drug trafficking. Later that same day, the informant called Vogel back and told him that Stolkner's girlfriend had told the informant that her plans had changed, and that she would not be delivering the drugs as planned. Instead, Joe Lux would come to the apartment and pick up the drugs.

[¶ 5] Lux was known to Agent Dumas, who, a couple of months before, had searched Lux's apartment based on infor-

mation that Lux was receiving drugs via UPS. That search had turned up a quantity of drug paraphernalia but no drugs. The agents also knew Lux to be a friend or associate of Scott Stolkner, and had information from other informants that Lux may have been involved in the trafficking of marijuana and LSD.

[¶ 6] On December 8, the agents observed Lux's car as it entered the parking lot at Forest Park, remained there for approximately five to seven minutes, and drove off—exactly as predicted by the informant. They followed the car away from the apartment complex and observed that Lux himself was driving. He drove to a local restaurant, taking a route that suggested he was driving evasively. As soon as Lux left the restaurant and returned to the car, the agents asked the Portland police to stop the car.

[¶ 7] The agents immediately searched the entire car. Agent Dumas searched the passenger compartment. At the same time, Agent Vogel took the keys from the ignition and opened the trunk. Inside the trunk was a safe, which Vogel opened with a key from the same key chain. Inside the safe was a 9–millimeter handgun and a magazine containing several 9–millimeter rounds. Lux was charged with unlawful possession of a firearm. After the court denied his motion to suppress the evidence found in the safe, Lux was convicted in a jury-waived trial. This appeal followed.

## II. THE STOP

[¶ 8] Law enforcement officials are justified in making an investigatory stop if, "at the time of the stop: (1) [they have] an 'articulable suspicion' of criminal activity; and (2) [that] suspicion is 'objectively reasonable in the totality of the circumstances.'" *State v. Lear*, 1998 ME 273, ¶ 5, 722 A.2d 1266, 1267 (quoting *State v. Brown*, 1997 ME 90, ¶ 5, 694 A.2d 453, 455).

[¶ 9] Dumas and Vogel articulated an objectively reasonable suspicion that Lux was transporting a quantity of marijuana. Their suspicion was based on a detailed tip from a previously reliable informant, made all the more credible by the agents' recent experience with Lux and with Stolkner's apartment, and corroborated by the agents' observations. *See, e.g., State v. Sampson*, 669 A.2d 1326, 1328 (Me.1996) (anonymous tip corroborated by officer's observations supported reasonable suspicion). The stop of the car was justified.

## III. THE SEARCH

[¶ 10] Turning then to the search, "[p]robable cause exists when the officers' personal knowledge of facts and circumstances, in combination with any reasonably trustworthy information conveyed to them, would warrant a prudent person to believe that the container seized holds either contraband or evidence of a crime." *State v. Snow*, 527 A.2d 750, 753 (Me.1987); *see also State v. Tarantino*, 587 A.2d 1095, 1098 (Me.1991). Put another way, probable cause to search exists when "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Crowley*, 1998 ME 187, ¶ 3, 714 A.2d 834, 836 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). "[T]he quantum of proof necessary to establish probable cause is less than the level of fair preponderance of the evidence." *State v. Bradley*, 658 A.2d 236, 237 (Me.1995) (citing *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)).

[¶ 11] Possessing a corroborated tip from a previously trustworthy informant that Lux would pick up a large quantity of marijuana from Stolkner's apartment, the agents plainly had a "reasonable belief 'that contraband or evidence of a crime'" would be found in the car. *See State v. Izzo*, 623 A.2d 1277, 1282 (Me. 1993) (quoting *State v. Tomah*, 586 A.2d 1267, 1269 (Me.1991)). An informant's tip, corroborated by the agents' own knowl-

edge and observations, may provide the foundation for determining probable cause. *See, e.g., State v. Nickerson,* 574 A.2d 1355, 1356 (Me.1990) (tip regarding marijuana grown in basement, corroborated by officer's prior knowledge); *Snow,* 527 A.2d at 753 (tip regarding landing of oversized lobster meat, corroborated by officer's observations). The record fully supports the motion court's conclusion that the search of the car was justified.

[¶ 12] Because the officers had ample information supporting the stop of the car and the search in general, the only real question presented here is whether the officers also had probable cause to search the safe found in the trunk. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), *quoted in Wyoming v. Houghton,* 526 U.S. 295, ——, 119 S.Ct. 1297, 1301, 143 L.Ed.2d 408 (1999).

[¶ 13] To determine whether "an object of the search" could be contained in the safe, we must examine the permissible scope of the search. The "scope of the warrantless search [of an automobile] is no broader and *no narrower* than a magistrate could legitimately authorize by warrant." *Ross,* 456 U.S. at 825, 102 S.Ct. 2157 (emphasis added). We addressed a scope of search question in *State v. Wing,* 559 A.2d 783 (Me.1989). There, law enforcement officers obtained a warrant to search the defendant's house on the basis of their observation of marijuana being cultivated on his land. *See id.* at 784–85.

The warrant identified the objects of the search as "[m]arijuana, drugs, drug paraphernalia, drug records, and any evidence associated with drug trafficking." *Id.* at 786. We approved of that warrant description, holding that "[t]he trial court properly determined that because the goods described in the warrant and affidavit are contraband, or directly related to the sale, distribution or acquisition of contraband, the generic description was appropriate." *Id.* Similarly, the objects of the search of Lux's car could legitimately include objects related to the sale and distribution of drugs.[1] The search for generic but related contraband was reasonable on the facts known to the officers and did not offend the protections due Lux under the Fourth Amendment.

[¶ 14] The apparently reliable information that Lux would be transporting marijuana gave the agents probable cause to believe that the car contained related evidence of drug trafficking, including not only ten pounds of marijuana but also a lesser quantity of that substance, drug trafficking records, and scales or other paraphernalia.[2] Because those legitimate objects of the search could have been concealed in the safe in the trunk of Lux's car, the search of the safe was supported by probable cause.

[¶ 15] If the officer has probable cause "just prior to the search," *see Izzo,* 623 A.2d at 1282, he may continue searching until he has searched "every part of the vehicle and its contents that may conceal the object of the search," *see Ross,* 456 U.S. at 825, 102 S.Ct. 2157. "The practical considerations that justify a war-

---

**1.** *See also United States v. Owens,* 167 F.3d 739 (1st Cir.1999). There, when a drug-sniffing dog "alerted" on a car stopped for speeding, the officers had "probable cause to believe that the automobile contained drugs *and evidence of drug trafficking,*" which justified the search of a hidden compartment and the seizure of address books, notebooks, cash, and guns found therein. *Id.* at 747–50 (emphasis added).

**2.** It is unnecessary to decide whether the agents, in the absence of evidence that Lux was known by the agents to carry a gun or have a propensity for violence, also had probable cause to search for weapons. Even if they did not, the safe was lawfully opened in a search for drugs, records, or paraphernalia, and the handgun was lawfully seized pursuant to the plain view doctrine. *See State v. Dignoti,* 682 A.2d 666, 671–72 (Me.1996).

rantless search of an automobile continue to apply *until the entire search of the automobile and its contents has been completed.*" *Id.* at 821 n. 28, 102 S.Ct. 2157 (emphasis added). The lawful search of Lux's car encompassed the search of the trunk and the safe therein.

[¶ 16] The motion court did not err in refusing to suppress the evidence of the gun.

The entry is:

Judgment affirmed.

