STATE OF MAINE                        UNIFIED CRIMINAL COURT

ANDROSCOGGIN, ss                      DOCKET NO. CR-19-3410


STATE OF MAINE            )
                         )
                         )
                         )
vs.                      )            ORDER ON MOTION
                         )              TO SUPPRESS
                         )
                         )
PATRICK GAUTHIER,        )
              Defendant  )


By an information dated September 25, 2020, the Defendant, Patrick Gauthier (hereafter

"Gauthier") is charged with Operating After Revocation, Class C (29-A M.R.S.A. §2557-

A(2)(B)). Before the court is the Gauthier's Motion to Suppress, filed September 25, 2020.

Hearing on the motion was held July 28, 2021. At hearing, testimony was received from Officer

Brian Smith of the Androscoggin County Sheriffs Office. Also admitted into evidence was State

Exhibit 1(Ex. 1) which is a flash drive containing the video recording of the stop of Gauthier

made by the officer's cruiser camera. The issue raised by Gauthier is that the officer exceeded

the scope of articulable suspicion and illegally detained Gauthier when he proceeded to seek

information about the status of Gauthier's license after the officer realized the driver of the

vehicle was not whom he anticipated.

1

1. Findings of Fact

On November 3, 3019 Officer Smith was monitoring traffic on Route 4 in Turner, Maine. He observed a pick-up drive past him with license plate "2355EU", and had the plate number run. He learned the vehicle was registered to a person identified as Christine Pratt, whose driver's license was suspended for operating under the influence. The officer did not identify the driver of the pick-up as it went past him, and based on the information that the registered owner's license was under suspension, he decided to initiate a stop of the vehicle.

Officer Smith pulled up behind the pick-up, followed it a short distance, then initiated a stop by activating his blue lights. The officer did not observe any moving violations, and the stop was initiated solely on the information that the drivers license of the registered owner of the vehicle was under suspension. The pick-up promptly responded to the blue lights and appropriately pulled off the road into the adjacent parking lot of the "Food City" grocery store. The officer exited his cruiser and approached the driver's side of the pick-up. When the officer got to the driver's door, he observed the driver was a male, and was not the suspended driver he anticipated, namely Christine Pratt. The officer stated to the driver "You're not her..". The driver was Gauthier.

The officer then told Gauthier why he had stopped the vehicle, and that he knew the registered owner of the vehicle, Ms. Pratt's, license was under suspension. The officer then advised Gauthier that he was going to check the status of his license, and asked Gauthier for his name and license. Gauthier provided his name, but told the officer he did not have his license with him. The officer returned to his cruiser and commenced to run the status of Gauthier's license. Within a short time of the officer returning to his cruiser, Gauthier exited the pick-up, walked to the cruiser, and told the officer "..I can't lie.....I don't have a license...". Officer Smith

2

thanked Gauthier for being truthful. The officer completed running Gauthier's license information, and confirmed Gauthier's license was revoked. Officer Smith then assisted Gauthier make arrangements to get home and issued him a summons.[1]

2. Standard of Review

At hearing, Gauthier conceded Officer Smith had a reasonable articulable suspicion to stop the vehicle. But to address the issue raised by Gauthier, the court feels the analysis must still begin with whether a reasonable articulable suspicion existed to stop the vehicle.

To conduct a constitutionally permissible traffic stop, an officer must have, at the time of the stop, an articulable suspicion that either criminal conduct, a civil violation, or a threat to public safety has occurred, is occurring, or is about to occur. *State v. Porter,* 2008 ME 175, ¶ 8. The officer's assessment of the existence of specific and articulable facts sufficient to warrant the stop must be objectively reasonable in the totality of the circumstances. *State v. Donatelli,* 2010 ME 43, ¶ 11; *State v. Lux,* 1999 ME 136, ¶ 8. The suspicion for the stop must be based on information available at the time of the stop and cannot be bolstered by evidence secured by the stop. *State v. Nelson,* 638 A.2d 720, 722 (Me. 1994). The reasonable suspicion standard requires less than probable cause that a crime was committed, but more than speculation or an unsubstantiated hunch. *State v. Caron,* 534 A.2d 978, 979 (Me. 1987). Reasonable articulable suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. *Porter,* ¶ 9.

---

[1] At hearing, Gauthier's counsel indicated he was not challenging whether there was a reasonable suspicion to initially stop the vehicle, nor was he challenging whether Gauthier's statements made when he went to the cruiser violated Miranda. Gauthier's challenge is limited to the officer's conduct after he learned the driver was not whom he anticipated, and argues that at that moment the officer should have suspended any additional questioning or investigation.

3

To be valid under the fourth amendment, the stop must be supported by specific and articulable facts which, taken as a whole and together with the rational inferences from those facts, reasonably warrant the police intrusion. *State v. Hill*, 606 A.2d 793, 795 (Me. 1992), citing *Terry v. Ohio*, 392 U.S. 1, 22, 20 L.Ed. 2d 889 (1968). Once a defendant has been validly seized, the scope of subsequent police conduct must be justified under the second *Terry* prong and evaluated to determine whether it is reasonable under all the circumstances. *Id.* The reasonableness determination involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. *Id.*

3. Discussion

The facts of this case are nearly on point with *State v. Hill*. In *Hill*, the officer stopped the vehicle believing it did not have a rear license plate, but as he walked up to the vehicle he saw the plate in the rear window. The officer still approached the driver and asked him for his license and registration, which ultimately led to an arrest for operating under the influence.

In this case, upon learning that the pick-up he just observed go past him on Route 4 was owned/registered to someone whose driver's license was suspended due to operating under the influence, Officer Smith had an objectively reasonable articulable suspicion that the vehicle was operated by someone whose license was suspended. As Gauthier concedes, there was a reasonable articulable suspicion to stop the vehicle, and initiating the stop was proper. It was not until after Officer Smith stopped the pick-up that he learned the driver was not who he anticipated. The fact that the suspicion for the stop still existed when the stop was initiated renders the stop lawful and permissible. (See *State v. Huether*, 2000 ME 59, ¶7, citing *State v.*

4

*Hill*, 606 A.2d at 794-795 "Because the officer made the stop before his suspicion had dissipated, the stop was permissible.").

This takes us to the issue raised Gauthier, and whether the subsequent conduct by Officer Smith, and his asking Gauthier for information about his license, was lawful. This is the second *Terry* prong referenced above. The Maine Supreme Court has stated a detention related to a request by a law enforcement official that a motor vehicle operator demonstrate that the operator is licensed to drive is not an unreasonable intrusion when the official's initial contact with the operator is based on reasonable and articulable facts of a concern for safety or wrongdoing. *State v. Gulick*, 2000 ME 170, ¶21. As discussed, the stop of the vehicle which led to contact with Gauthier was based on reasonable and articulable facts that traffic laws had been violated, namely that the vehicle was being operated by someone whose license had been suspended. Officer Smith then asking Gauthier for his name and license, and seeking information about the status of his license, was not an unreasonable intrusion, even after Officer Smith realized the driver of the pick-up was not whom he anticipated. Officer Smith asking Gauthier for his name and seeking information about his license was not unlawful or improper.

The order is: Defendant's motion to suppress is DENIED.

Dated: July 28, 2021

Justice, Superior Court