STATE OF MAINE                              SUPERIOR COURT
WASHINGTON, SS.                             Docket No. WASCD-CR-19-221


STATE OF MAINE,                    )
                                   )
                                   )
                                   )
                                   )
            v.                     )
                                   )       **Order on Motion to Suppress**
                                   )
Wayne Smeal,                       )
                                   )
            Defendant.             )
                                   )
                                   )
                                   )


## Introduction

Defendant has moved to suppress evidence seized pursuant to a warrant authorizing the search of a vacant lot he owns in Steuben. An evidentiary hearing was held on March 15, 2021 and September 27, 2021. All briefing is now complete, and the court has considered the evidence and arguments presented by the parties. A decision is in order.

## Facts

Police received information about Defendant's possible involvement in drug trafficking from at least two citizen informants, the first of whom contacted police on May 26, 2019. The first citizen believed Defendant was hiding drugs in a camper trailer parked on property across from Parritt's Auto Body in Steuben and conveyed that information to an officer.

The second citizen informant, later identified as Michael Hubisz, reached out to law enforcement on June 3, 2019. Hubisz explained he learned from a third-party source that Defendant had been visiting the land across from Parritt's Auto Body. Hubisz and the third-party then traveled to the property where they located a plastic container buried in the soil. They proceeded to photograph the container and rebury it, after which Hubisz shared his photograph with an officer. Police believed the photograph depicted a container of heroin.

1

An investigating agent, Agent Day, then applied for a warrant to search the property. The search warrant affidavit described various features of the property, provided directions to the land with reference to Parritt's Auto Body, and cited the book and page number of a deed recorded in Washington County. A different deed—which apparently described a parcel adjacent to Defendant's property—was mistakenly attached to the affidavit.

As Agent Day attempted to secure a search warrant, two other agents conducted surveillance in the area surrounding Defendant's parcel of land. These agents witnessed Defendant park at Parritt's Auto Body, cross the road, and return to his car. Defendant was then detained and handcuffed, after which the agents observed a baggie of brown powder fall from Defendant's pantleg. The resultant search of Defendant's person yielded a .357 Magnum revolver.

Agent Day eventually arrived with a signed search warrant, and a search of Defendant's property commenced. The unmarked land was described as a "vacant lot" with tall grass, woods, and an overgrown driveway. A trailer frame—which lacked any habitable space—was situated on the property and appeared to have been burned at some point in the past. Police observed no other physical structures.

During the search, one agent noticed "a tiny bit of blue poking up" from beneath the ground. She dug away the surrounding dirt and discovered a container with several baggies of suspected heroin inside.

## Discussion

Defendant challenges the lawfulness of the warrant authorizing the search of his vacant lot, arguing it was unsupported by probable cause and failed to describe the searchable area with particularity. The State counters that no warrant was needed in the first place because the "open fields" doctrine justified a warrantless search.

The "special protection accorded by the Fourth Amendment to the people in their persons, houses, papers, and effects is not extended to the open fields." *Oliver v. United States*, 466 U.S. 170, 176 (1984) (internal quotation marks omitted). "An 'open field' is that area outside the curtilage." *State v. Pease*, 520 A.2d 698, 699 (Me. 1987). Individuals have "no legitimate expectation that open fields will remain free from

2

warrantless intrusion by government officers." *Oliver*, 466 U.S. at 181. Accordingly, officers may "enter and search a[n open] field without a warrant." *Id.* at 173. Moreover, "[e]vidence found lying in 'open fields' ... is not considered to be the product of a search of a house for constitutional purposes and may be seized without a warrant." *State v. Pelletier*, 673 A.2d 1327, 1329 (Me. 1996) (upholding the warrantless seizure of a thermos stuffed with baggies of marijuana found 250-300 yards from the defendant's home).

In this case, Defendant's vacant, wooded lot fits within the definition of an "open field." Only an overgrown driveway and burned trailer frame existed on site. There were no signs of habitation and the land was not posted against trespassers. The court therefore concludes Defendant's uninhabited land was an "area outside the curtilage" to which no reasonable expectation of privacy attached. *Pease*, 520 A.2d at 699.

Defendant advances a second argument, that the open fields doctrine is limited to "sight-based observational surveillance" of the area within the open field. He contends that police exceeded the scope of this limitation by digging in the ground to retrieve the container. With no apparent Law Court decisions addressing this issue, Defendant directs the court to decisions of various federal circuit courts, which have declined to extend the open fields doctrine "beyond observational searches." *Kee v. City of Rowlett*, 247 F.3d 206, 217 n. 21 (5th Cir. 2001). The Fifth, Sixth, and Eighth Circuits appear to adhere to this "observational search" rule. *See, e.g., United States v. Pennington*, 287 F.3d 739, 745 (8th Cir. 2002); *Husband v. Bryan*, 946 F.2d 27, 29 (5th Cir. 1991); *Allinder v. Ohio*, 808 F.2d 1180, 1185 (6th Cir. 1987). The State, meanwhile, points to the First Circuit's decision in *United States v. Fahey*, which held that the open fields doctrine permitted the government to remove soil samples from the ground beneath an open field. 769 F.2d 829, 837-38 (1st Cir. 1985).

The court can envision scenarios in which the search and seizure of property buried and out of sight in an open field would necessitate a warrant. But the court does not think the rule adopted by the he Fifth, Sixth, and Eighth Circuits limits police to the type of cursory sight-based inspection advocated by Defendant. *See, e.g., Pennington*, 287 F.3d at 745-46; *United States v. Ishmael*, 48 F.3d 850, 853 (5th Cir. 1995). For instance, in *Pennington*, the Eight Circuit acknowledged that the open fields doctrine was limited to "a search of what is in plain view," but nevertheless upheld the warrantless search of an

3

underground bunker given its location "in an open field, its readily visible entryway with an unprotected ladder facilitating access to the tunnel, and [the absence of a] lock or door impeding access." 287 F.3d at 745-46.

In this case, the container was partially visible from the vantage point of a person standing in the "open field." Indeed, although the container was mostly buried, one of the agents observed "a tiny bit of blue poking up" above the soil. There was no obstruction that prevented the agent from brushing away the dirt and retrieving the item from the shallow hole in the ground. Under these circumstances, Defendant cannot demonstrate that any expectation of privacy in the container was objectively reasonable. The court is therefore satisfied that police did not need a warrant to search defendant's "open field" and remove the container from the ground.

For the reasons above, Defendant's motion to suppress is DENIED.

The Clerk may incorporate this Order upon the docket by reference.

Dated: April 20, 2022

The Hon. Bruce C. Mallonee
Justice, Maine Superior Court

4